# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LARRY TALTON, II & STACIE TALTON,

              Plaintiffs,                    Case No. 11-cv-14512

v.                                  Hon. David M. Lawson
                                     Magistrate Judge Mona K. Majzoub

BAC HOME LOANS SERVICING, L.P.,

              Defendant.            **DEFENDANT'S ANSWER AND**
                                  **AFFIRMATIVE DEFENSES**

---

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Bank of America, N.A. ("BANA"), successor by merger to BAC Home Loans Servicing, responds to plaintiffs' complaint as follows:

### JURISDICTIONAL ALLEGATIONS

1.      Plaintiffs are a married couple, who resides in the City of Southfield, County of Oakland, State of Michigan.

**RESPONSE:**

BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1.

2.      The real property that is the subject of the instant action is located in the City of Southfield, County of Oakland, State of Michigan, and is legally described as follows:

Apt. No. 7, Building B, Ranchwood Villas Condominium, a Condominium according to the Master Deed recorded in Liber 10345, Page 74 through 101, inclusive, Oakland County Records as amended and designated as Oakland County Condominium Subdivision Plan Number 537, together with Rights in Common Elements and Limited Common Elements as set forth in the

aforementioned Master Deed and as described Defendant. in Act 59 of the Public Acts of 1978 as amended, Tax Parcel ID: 24-15-201-033, commonly known as 28885 Ranchwood Drive, Unit 7 (the "Property").

**RESPONSE:**

Admitted.

3.      BAC is a Texas limited partnership, headquartered at 4500 Park Granada, Calabasas, CA, 91302-1613, which is authorized to conduct business and which does in fact conduct business in the City of Southfield, County of Oakland, State of Michigan.

**RESPONSE:**

BANA admits only that it is duly licensed under the State of Michigan to service mortgage loans and is legally doing business within the State of Michigan.  Answering further, BANA denies the remaining allegations in paragraph 3.

4.      Jurisdiction is proper in this Court, pursuant to MCL §600.601, as Plaintiffs seeks, among other things, equity with respect to the Property, which is a unique parcel of real estate that is not adequately compensable in monetary damages.

**RESPONSE:**

BANA does not contest jurisdiction.

5.      Venue is proper in this Court pursuant to MCL §600.1605(c), for the reason that the Property is located in the City of Southfield, County of Oakland, State of Michigan.

**RESPONSE:**

BANA does not contest venue.

6.      Jurisdiction is further proper in this Court, as Plaintiffs seeks redress under Michigan law only, and not federal law, and the amount in controversy exceeds $25,000.

2

**RESPONSE:**

BANA does not contest jurisdiction.

## COMMON ALLEGATIONS

7.      Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

8.      The mortgage loan and related Note at issue were executed by and between Plaintiffs, on the one hand, and Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as "nominee" for the mortgagee, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), on the other, on April 25, 2008, and was recorded on May 13, 2008, in Liber 40299, Page 70, Oakland County Records. (*See* Mortgage — **Ex. "A"**.)

**RESPONSE:**

The mortgage document and related Note referenced in this paragraph speak for themselves.  To the extent that the allegations are inconsistent with or mischaracterize the referenced documents, BANA denies the allegations as untrue.

9.      The loan was guaranteed and/or otherwise granted under the authority of the U.S. Department of Housing and Urban Development ("HUD"), and is therefore subject to HUD guidelines and the Code of Federal Regulations, as more fully discussed below.

**RESPONSE:**

The mortgage document and related Note referenced in this paragraph speak for themselves.  To the extent that the allegations are inconsistent with or mischaracterize the referenced documents, BANA denies the allegations as untrue.

3

10.     TBW has never assigned its rights as mortgagee to other person or entity, yet as discussed below, it is not TBW — the only party with legal authority to foreclose upon Plaintiffs' home — that is actually trying to take Plaintiffs' home away from them.

**RESPONSE:**

Denied.

11.     For the past several years, Plaintiffs' loan has purportedly been serviced by BAC, although Plaintiffs challenge whether BAC was lawfully retained by TBW to do the same.

**RESPONSE:**

BANA admits only that it is the servicer for plaintiffs' loan as the successor by merger to BAC Home Loans Servicing,  Further answering, BANA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, if any, of this paragraph.

12.     As a result of a recession caused in large part by Defendant's conduct in the mortgage industry throughout the past several years, like many Defendants, most especially Michigan residents, Plaintiffs have suffered a reduction in income.

**RESPONSE:**

BANA denies that its conduct in the mortgage industry caused a large part of the recession.  BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 12.

13.     As a result of the same, Plaintiffs contacted the purported servicer of their loan, Defendant, BAC, and requested a HAMP and/or other modification.

**RESPONSE:**

BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13.

4

14.     Pursuant to HUD guidelines, as discussed below, Defendant was under a **strict obligation** — far more than any non-HUD servicer, to do **anything and everything in its power** to modify the loan prior to the commencement of foreclosure proceedings.

**RESPONSE:**

The allegations in paragraph 14 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

15.     In furtherance of a scheme to force performing loans into non-performing status, such that it could earn substantial, unwarranted servicing fees, including but not limited to a "foreclosure bonus", Defendant strung Plaintiffs along quite literally for years, in the HAMP modification process, including numerous fraudulent and otherwise bogus denials of HAMP modification although they qualified for the same.

**RESPONSE:**

Denied.

16.     Defendant literally went from denying Plaintiffs' request for modification based on the claim that Plaintiffs made too much money to qualify for modification, to denying Plaintiffs' request for modification based on the claim that Plaintiffs did not make enough money to qualify for loan modification, to once again denying Plaintiffs' request for modification based on the claim that Plaintiffs made too much money to qualify for modification, to once again denying Plaintiffs' request for modification based on the claim that Plaintiffs did not make enough money to qualify for loan modification, before once again denying Plaintiffs' request for modification based on the claim that Plaintiffs made too much money to qualify for modification, etc.

5

**RESPONSE:**

Denied.

17.    Finally, at one point, Defendant informed Plaintiffs that they qualified for a

HAMP modification, and that a package would be coming in the mail.

**RESPONSE:**

Denied.

18.    The HAMP modification package never came, and when Plaintiffs contacted

Defendant to inquire as to the status of the same, they were informed that they waited too long to

mail back the package that was never even sent in the first place, and as a result, their HAMP

modification was canceled.

**RESPONSE:**

Denied.

19.    In approximately July, 2010, instead of modifying Plaintiffs' loan as absolutely

required by HUD guidelines and therefore the Federal Code of Regulations as discussed below,

Defendant hired the foreclosing law firm of Trott & Trott to illegally foreclose upon Plaintiffs.

**RESPONSE:**

Denied.

20.    Trott & Trott's apparent first step in the foreclosure process was a failed attempt

to clean up the mess caused by mortgagees over the past 15 years in utilizing MERS instead of

recording assignments of mortgage in the offices of the local register of deeds, as discussed

below.

**RESPONSE:**

Denied.

Detroit_1133267_1

21.     Specifically, it appears that on August 10, 2010, an employee of Trott and Trott, disingenuously masquerading as a "Vice President" of MERS, based upon an alleged "Agreement for Signing Authority Dated 05/19/2009", executed a purported Assignment of MERS' rights in and to the mortgage to Defendant (the "Invalid Assignment"), and the same was recorded in the offices of the Oakland County Register of Deeds, at Liber 42344, Page 96, Oakland County Records. (*See* Invalid Assignment — **Ex. "B"**.)

**RESPONSE:**

The Assignment of Mortgage referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Assignment of Mortgage, BANA denies the allegations as untrue.

22.     As discussed below, the Invalid Assignment was invalid for a number of reasons, the most important of which being that the Michigan Court of Appeals has already held, in legal authority which is absolutely binding upon this Court, that **MERS is not a mortgagee, and does not have the right of a mortgagee to foreclose upon any properties in the State of Michigan.**

**RESPONSE:**

Denied.

23.      It is black letter law, and binding authority in Michigan, that an assignee stands in the shoes of his/her assignor, and obtains no further rights than his/her assignor.

**RESPONSE:**

The allegations in paragraph 23 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the law that is cited.

Detroit_1133267_1

24.    Based on the foregoing, the purported Assignment from MERS did not provide Defendant with the authority to foreclose upon Plaintiffs' home, yet that it exactly what Defendant seeks to do in this case, and will get away with, absent judicial intervention by this Honorable Court.

**RESPONSE:**

Denied.

25.    On August 10, 2010, Defendant, which does not own the loan at issue and does not have the legal authority to foreclose, commenced the pre-foreclosure process, which included the mailing of a 14 day notice to Plaintiffs, informing them of their right to go through Michigan's statutory 90 day modification process prior to the foreclosing law firm being authorized to foreclose.

**RESPONSE:**

The August 10, 2010 letter (or notice) referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced letter, BANA denies the allegations as untrue.

26.    Plaintiffs therefore retained counsel, and participated in the Michigan statutory modification process, which was supposed to last 90 days, and based on their income was required to conclude with a permanent loan modification, and the cancellation of foreclosure proceedings on or about November 10, 2010.

**RESPONSE:**

Denied.

27.    Instead of 90 days, it took Defendant eight months to review Plaintiff's request for modification, presumably because Defendant was hell-bent on foreclosing, but was reeling

from the "robo-signing" scandal it was implicated in, and needed several months to figure out how to foreclose on properties in which, as discussed below, it is not even the mortgagee and is not authorized to foreclose under Michigan law.

**RESPONSE:**

Denied.

28.    On April 8, 2011, long after the process which began on August 10, 2010, Trott & Trott sent Plaintiffs a denial letter in misconduct, which as discussed below, **absolutely requires calculations of income and expenses, and an explanation as to whether Plaintiffs qualified for statutory modification** (the "Illegal Denial Letter"). (*See* Illegal Denial Letter — **Ex. "C"**.)

**RESPONSE:**

The April 8, 2011 letter and referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced letter, BANA denies the allegations as untrue.

29.    Instead of calculating Plaintiffs' income and making a determination as to whether Plaintiffs qualified for modification, the Illegal Denial Letter was upon information and belief **intentionally vague**, and merely indicated "you have failed to satisfy one or more guideline requirements established by the investor on this loan. Consequently, the lender and/or servicer cannot offer you a loan modification. As a result of the fact that the loan is ineligible for modification, this office is proceeding with foreclosure." (*See* Illegal Denial Letter — **Ex. "C"**.)

**RESPONSE:**

Denied.

30.    The reason the Illegal Denial Letter was intentionally vague, was that much like Plaintiffs' request for modification in the years leading up to the pre-foreclosure statutory

9

modification process, **Plaintiffs qualified for modification, and Defendant knew it, but Defendant did not want to modify Plaintiff's loan, as the same was guaranteed by HUD, and Defendant was more interested in an immediate repayment of the entire mortgage loan from HUD, than in waiting for Plaintiffs to pay the same over 30 years, as Defendant's were contractually obligated to do.**

**RESPONSE:**

      Denied.

      31.    Under Michigan law, if a mortgagor qualifies for modification, but the foreclosing entity does not wish to grant the same, the foreclosing entity loses the right to a cheap and easy foreclosure by advertisement and auction sale, and is strictly required to file an expensive lawsuit against the mortgagor for judicial foreclosure, and this was the reason for the vague and otherwise Illegal Denial Letter.

**RESPONSE:**

      Denied.

      32.    In other words, Defendant did not want to modify Plaintiffs' loan, nor did Defendant want to pay for an expensive judicial foreclosure, so Defendant eschewed providing Plaintiffs with the calculations utilized to determine their eligibility for statutory modification, and used the vague language regarding the failure to satisfy one or more guidelines to wiggle out of its responsibilities under the law.

**RESPONSE:**

      Denied.

Detroit_1133267_1

33.     Plaintiffs have suffered damages as a result of Defendant's above-referenced misconduct, in that they were required to pay a second retainer to their attorney, in order to challenge the denial.

**RESPONSE:**

Denied.

34.     Based on counsel for Plaintiff's actions, Defendant agreed to continue reviewing the file for modification, and requested numerous additional documents from Plaintiffs, on several occasions, from April through July, 2011.

**RESPONSE:**

BANA admits only that it did request documentation from plaintiffs on several occasions from April through July 2011 in order to be able to review plaintiffs for a loan modification. Further answering, BANA denies the remaining allegations of paragraph 34.

35.     Plaintiffs provided all of the requested documentation, in the manner and within the time-frame required by Defendant, and the documentation, as always, proved they were eligible for modification, yet Defendant continued to deny Plaintiffs' request for modification, in violation of both Michigan law, and HUD guidelines and the Code of Federal Regulations.

**RESPONSE:**

Denied.

36.     Defendant has refused, despite the demand of Plaintiffs' attorney, to cancel the illegal foreclosure proceedings, and Defendant, which does not even own Plaintiffs' loan, has instructed Trott & Trott to foreclose upon the same in violation of Michigan and federal law, and Plaintiffs will therefore lose their home on August 30, 2011, without the intervention of this Honorable Court.

11

**RESPONSE:**

Denied.

37.     The Property is a unique parcel of real estate, which cannot be adequately compensated in monetary damages, and Plaintiffs would therefore suffer irreparable harm if immediate injunctive relief is not granted, preserving the status quo pending the resolution of their claims in the instant action.

**RESPONSE:**

The allegations in paragraph 37 are legal conclusions to which no response is required. To the extent an answer is required, denied.

38.     Defendant are fully aware that Plaintiffs is represented by counsel, but have continued to contact Plaintiffs directly, in an attempt to collect the alleged debt, in direct violation of both the Michigan and Federal Fair Debt Collection Practices Acts, as more fully set forth below.

**RESPONSE:**

Denied.

39.     Counsel for Plaintiffs has informed the foreclosing law firm, Trott & Trott, of Plaintiffs' intention to file a lawsuit to prevent the sale, has informed Trott & Trott that he will be traveling to the courthouse to seek a temporary restraining order to prevent the same and has invited an attorney at Trott & Trott to appear to defend against those efforts, and has further requested that Trott & Trott stipulate to a voluntary Status Quo Order, to avoid the necessity of an emergency request for injunctive relief.

**RESPONSE:**

12

BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.

40.     Trott & Trott has informed counsel for Plaintiffs that Trott & Trott is retained only to foreclose, and not for any litigation, and that Trott & Trott therefore does not have authority to either grant a Stipulated Status Quo Order, nor will Trott & Trott travel to meet counsel for Plaintiffs at court, to challenge the request for a Temporary Restraining Order.

**RESPONSE:**

BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40.

**COUNT 1- INVALID ASSIGNMENT - NO PROOF
OF OWNERSHIP OF LOAN/AUTHORITY TO FORECLOSE**

41.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

42.     Michigan's foreclosure by advertisement statute, MCL 600.3204, requires as follows:

> (1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> .... (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

**RESPONSE:**

The allegations in paragraph 42 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

13

43.     It is well established in Michigan that assignees stand in the shoes of their assignors, and obtain only the rights of their assignor, and no more.

**RESPONSE:**

The allegations in paragraph 43 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the cited legal authority.

44.     The Michigan Court of Appeals has held, in authority that is fully binding upon this Court, that MERS is not a mortgagee, but merely a "nominee" of the mortgagee, and as a result, MERS has been barred under Michigan law from commencing any further foreclosure Proceedings in the State of Michigan since approximately April, 2011.

**RESPONSE:**

The allegations in paragraph 44 are legal conclusions to which no response is required. To the extent an answer is required, BANA as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the cited legal authority.

45.     Based upon the foregoing clear and well established principles of Michigan law, to the extent that any assignment relied upon by Defendant to foreclose in accordance with MCL 600.3204(1)(d) was executed by or on behalf of MERS, said assignment does **not** confer the authority to foreclose upon Defendant.

**RESPONSE:**

Denied.

46.     In other words, assignees of MERS are as powerless to foreclose in the State of Michigan as is MERS itself, because the only rights conferred upon assignees of MERS are the rights of a "nominee" and not the rights of a mortgagee.

Detroit_1133267_1

**RESPONSE:**

Denied.

47.     This fact, standing alone, invalidates the foreclosure proceedings and requires Defendant, at a minimum, to cancel the proceedings and begin the process anew only if and when Defendant obtains a valid assignment of the mortgage at issue in this litigation.

**RESPONSE:**

Denied.

48.     To the extent that any assignment relied upon by Defendant to foreclose in accordance with MCL 600.3204(l) (d) was executed by an attorney or employee of the foreclosing law firm, acting as **alleged** agent for the mortgagee, such assignment is invalid without proof that the alleged agent maintained a valid and binding **power of attorney** to execute such documents at the time of the execution of the assignment.

**RESPONSE:**

The allegations in paragraph 48 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

49.     This fact, standing alone, invalidates the foreclosure proceedings and requires Defendant, at a minimum, to cancel the proceedings and begin the process anew only if and when Defendant obtains a valid assignment of the mortgage at issue in this litigation.

**RESPONSE:**

Denied.

15

50.     To the extent that any assignment relied upon by Defendant to foreclose in accordance with MCL 600.3204(l) (d) was executed by a representative of a company that ceased to exist **prior** to the date of the assignment, such assignment is clearly invalid.

**RESPONSE:**

Denied.

51.     TBW has filed for bankruptcy, and upon information and belief no longer exists as a corporate entity.

**RESPONSE:**

BANA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51.

52.     This fact, standing alone, invalidates the foreclosure proceedings and requires a judicial declaration that there is no party that is now, or will ever have the authority to either foreclose, or even collect any further mortgage payments from Plaintiffs, as this is a defect which cannot ever be cured.

**RESPONSE:**

Denied.

53.     Plaintiffs have suffered damages as a result of Defendant's misconduct, as more fully set forth above.

**RESPONSE:**

Denied.

## COUNT 2- MI FORECLOSURE BY ADVERTISEMENT STATUTE

54.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

16

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

55.    Michigan's foreclosure by advertisement statute, MCL 600.3204, requires as follows:

> (4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(l) if 1 or more of the following apply:
>
> (f) Calculations under section 3205c(l) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

**RESPONSE:**

The allegations in paragraph 55 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

56.     The foreclosure was in violation of MCL 600.3204, in that the calculations under section 3205c(l), during the statutory modification process, show that the mortgagor is eligible for a loan modification and therefore "foreclosure under this chapter is not allowed under section 3205c(7)".

**RESPONSE:**

Denied.

57.    Plaintiffs have suffered damages and continue to suffer damages as a result of Defendant's above-referenced violations of statutory law.

**RESPONSE:**

Denied.

## COUNT 3- MI STATUTORY MODIFICATION LAW

17

58.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

59.     As a condition precedent to the commencement of foreclosure by advertisement and/or judicial foreclosure, the foreclosing entity must comply with MCL 600.3205a through c.

**RESPONSE:**

The allegations in paragraph 59 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

60.     MCL 600.3205a(l)(c) requires that the foreclosing entity designate a person authorized to enter into loan modification agreements, and notify the borrower of the identity of such person, such that the borrower may contact that person and attempt to work out a loan modification.

**RESPONSE:**

The allegations in paragraph 60 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

61.     Defendant has failed to satisfy this condition precedent, by naming their foreclosing law firm as the person identified in MCL 600.3205a(l)(c), although the foreclosing law firm is absolutely **not** authorized to grant loan modifications.

**RESPONSE:**

Denied.

18

62.     This failure, standing alone, constitutes a failure of condition precedent that precludes foreclosure in this case, and no foreclosure may occur unless and until the foreclosing entity begins the foreclosure process anew, and properly identifies the person identified to grant loan modifications in accordance with MCL 600.3205a(l)(c).

**RESPONSE:**

Denied.

63.     In addition to the foregoing, MCL 600.3205c requires as a condition precedent to foreclosure that the person authorized to make loan modifications shall work with the borrower to determine whether the borrower qualifies for a loan modification.

**RESPONSE:**

The allegations in paragraph 63 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

64.     The reason for this requirement is identical to the reason courts, such as this Honorable Court, require persons with full settlement authority to appear at settlement conferences, and heavily sanction parties who fail to comply with this requirement.

**RESPONSE:**

The allegations in paragraph 64 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

65.     Defendant has failed to satisfy this condition precedent, by engaging in meetings with the borrower to determine if the borrower qualifies for loan modification without the presence and/or input of any person who is actually authorized to grant a loan modification.

Detroit_1133267_1

**RESPONSE:**

Denied.

66.     Specifically, the only representatives of Defendant who participated in the meeting to determine whether the borrower was eligible for modification were representatives of the foreclosing law firm, and representatives of the servicing agent, neither of which had any authority to modify the borrower's loan.

**RESPONSE:**

Denied.

67.     In fact, the only party with authority to modify the borrowers' loan is HUD, yet HUD was not present for the meeting.

**RESPONSE:**

Denied.

68.     This failure, standing alone, constitutes yet another failure of condition precedent that precludes foreclosure in this case, and no foreclosure may occur unless and until the foreclosing entity begins the foreclosure process anew, and ensures that the investor which owns the loan participates in the meeting required by MCL 600.3205c.

**RESPONSE:**

Denied.

69.     In addition to the foregoing, as set forth within the Common Allegations above, as a statutory condition precedent to the commencement of foreclosure proceedings, the foreclosing law firm **must** provide the borrowers with the calculations utilized to determine if they qualify for modification, and if they do qualify but the lender refuses to grant the same, the foreclosing law firm must inform the borrowers that foreclosure by advertisement is no longer available as

Detroit_1133267_1

an option under Michigan law, and that any further foreclosure proceedings would be conducted **judicially**.

**RESPONSE:**

The allegations in paragraph 69 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

70.     In order to save the money it would be required to pay Trott & Trott to conduct a judicial foreclosure, **Defendant instructed Trott & Trott to lie**, and claim that Plaintiffs "failed to satisfy one or more guideline requirements", which Defendant presumed would allow it cover to proceed to a cheap and easy foreclosure by advertisement and auction sale.

**RESPONSE:**

Denied.

71.     Plaintiffs did in fact qualify for statutory modification, they provided all requested documents to Trott & Trott in the manner and time-frame requested, and they otherwise fulfilled all "guideline requirements", and any statement to the contrary is a **knowing and intentional lie aimed at saving money in the foreclosure process.**

**RESPONSE:**

Denied.

72.     This failure, standing alone, constitutes yet another reason why the pending foreclosure auction sale must be canceled by the issuance of a Temporary Restraining Order, followed by a Preliminary Injunction after a show cause hearing on the merits.

**RESPONSE:**

Denied.

21

## COUNT 4- MI MORTGAGE BROKERS,
## LENDERS, AND SERVICERS LICENSING ACT

73.     Plaintiffs hereby adopt and incorporate by reference each and every allegation

contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

74.     Defendant's conduct as described herein constitutes numerous violations of the

Mortgage Brokers, Lenders, and Servicers Licensing Act, and more specifically the following

provisions of MCL 445.1672:

> (a) Fail to conduct the business in accordance with law, this act, or
> a rule promulgated or order issued under this act.
>
> (b) Engage in fraud, deceit, or material misrepresentation in
> connection with any transaction governed by this act.
>
> (c) Intentionally or due to gross or wanton negligence, repeatedly
> fail to provide borrowers material disclosures of information as
> required by law.
>
> (e) Fail to comply with 1966 PA 125, MCL 565.161 to 565.164,
> regulating the handling of mortgage escrow accounts by
> mortgagees.

**RESPONSE:**

Denied.

75.     Defendant's violations of statutory law as described herein, relative to its

underhanded dealings with respect to the HAMP program and statutory modification process,

were willful, wanton, and intentional, and were otherwise part of a pattern of abuse that

Defendant has engaged in with respect to most, if not all of the loans owned or guaranteed by

HUD, in which a HAMP application is made.

**RESPONSE:**

22

Denied.

76.     In the alternative to the above, Defendant's violations of statutory law throughout the HAMP application process and statutory modification process relative to Plaintiffs constituted gross negligence.

**RESPONSE:**

Denied.

77.     Plaintiffs have suffered damages and continue to suffer damages as a result of Defendant's above-referenced violations of statutory law.

**RESPONSE:**

Denied.

**COUNT 5- DECLARATORY RELIEF - FAILURE OF
CONDITION PRECEDENT - CODE OF FEDERAL REGULATIONS**

78.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

79.     The mortgage at issue in the instant action was issued by a government agency, and is therefore governed by the Code of Federal Regulations ("CFR"), which requires certain conditions precedent be met prior to the commencement of any foreclosure proceedings.

**RESPONSE:**

The allegations in paragraph 79 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

Detroit_1133267_1

80.     Among the relevant CFR provisions is the requirement that the mortgagee/servicer provide the borrower with a face-to-face meeting to resolve any default **before** the borrower falls three monthly payments behind in their mortgage. *See* 24 CFR 203.604.

**RESPONSE:**

The allegations in paragraph 80 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

81.     Defendant has violated the above-referenced provision of the Code of Federal Regulations in the instant action.

**RESPONSE:**

Denied.

82.     Violations such as these, standing alone, provide the basis for the relief requested herein by Plaintiffs.

**RESPONSE:**

Denied.

83.     Plaintiffs have suffered damages as a result of Defendant's above-referenced violations of the Code of Federal Regulations, as more fully described herein.

**RESPONSE:**

Denied.

84.     In addition to the foregoing, the CFR requires mortgagees/servicers to enter into loan modification agreements, including HAMP and other mortgage modifications, **as a condition precedent to foreclosure**.

24

**RESPONSE:**

The allegations in paragraph 84 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

85.     Defendant has failed to satisfy this condition precedent to foreclosure, as Plaintiffs qualify for HAMP, traditional/in-house and/or other loss mitigation options, but Defendant has failed/refused to grant such remedies.

**RESPONSE:**

Denied.

86.     Violations such as these, standing alone, provide the basis for the relief requested herein by Plaintiffs.

**RESPONSE:**

Denied.

87.     Plaintiffs have suffered damages as a result of Defendant's above-referenced violations of the Code of Federal Regulations, as more fully described herein.

**RESPONSE:**

Denied.

88.     It is well established that a mortgagee and/or servicer is not entitled to foreclose on a property unless and until the above-referenced condition precedent has been satisfied.

**RESPONSE:**

Denied.

89.     In fact, such is the **law** as it relates to such situations, as codified in 24 CFR 203.500, which states, in pertinent part: "It is the intent of the Department that no mortgagee

Detroit_1133267_1

shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."

**RESPONSE:**

The allegations in paragraph 89 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

## COUNT 6- TRUTH IN LENDING ACT

90.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

91.     15 USC 1639, known as the Truth in Lending Act ("TILA"), bars creditors from engaging "in a pattern or practice of extending credit to consumers under mortgages... without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 USC 1639(h).

**RESPONSE:**

The allegations in paragraph 91 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the legislation cited.

92.     In the instant action, if Defendant's assertions that Plaintiffs do not make enough money to qualify for loan modification are true, then they did not make enough money to afford the mortgage at issue at the time it was granted.

**RESPONSE:**

26

Denied.

93.     Defendant has therefore violated the above-referenced provision of TILA, in that at the time of granting the loan at issue, Defendant granted the loan with regard merely to the collateral for the loan, and without regard to Plaintiffs' ability to repay the same.

**RESPONSE:**

Denied.

94.     Plaintiffs have suffered damages as a result of Defendant's violations of TILA, as more fully described herein.

**RESPONSE:**

Denied.

## COUNT 7- DECLARATORY RELIEF - FORECLOSURE BARRED BY UNCLEAN HANDS

95.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

96.     Foreclosure is both a contractual and equitable form of relief, and is therefore not a valid course of action for any foreclosing entity which commences foreclosure proceedings in bad faith, or with unclean hands.

**RESPONSE:**

The allegations in paragraph 96 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the cited legal authority.

Detroit_1133267_1

97.     Defendant's above-referenced conduct constitutes multiple instances of bad faith negotiations with Plaintiffs, as well as bad faith processing of his mortgage loan and/or request for modification.

**RESPONSE:**

Denied.

98.     Although Defendant seeks the equitable relief of foreclosure, Defendant cannot make the requisite showing of clean hands in order to obtain such relief.

**RESPONSE:**

Denied.

99.     As a result of Defendant's acts of bad faith, Defendant is not entitled to the equitable relief of foreclosure.

**RESPONSE:**

Denied.

## COUNT 8- BREACH OF CONTRACT -
## IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

100.    Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

101.    Michigan courts recognize a duty of good faith in a contractual relationship where a party is given discretion to make a determination under the contract.

**RESPONSE:**

28

The allegations in paragraph 101 are legal conclusions to which no response is required. To the extent an answer is required, BANA denies as untrue the allegations, if any, to the extent they are inconsistent with or mischaracterize the cited legal authority.

102.     In the instant action, HUD has granted Defendant discretion to determine whether Plaintiffs qualify for a HAMP or statutory modification.

**RESPONSE:**

Denied.

103.     Defendant's conduct as described in this Complaint constitutes multiple breaches of its duty of good faith and fair dealing.

**RESPONSE:**

Denied.

104.     As a result of Defendant's breach of the implied covenant of good faith and fair dealing in the pre-foreclosure loss mitigation period, Plaintiffs has suffered damages.

**RESPONSE:**

Denied.

### COUNT 9-FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

105.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

106.     Defendant has engaged in multiple violations of the Fair Debt Collection Practices Act against Plaintiffs, including but not limited to the following:

a.     Defendant has failed to properly and completely give the validation notice required by 15 USC 1692g.

29

      b.      Misrepresentations to the borrower about the terms of the alleged debt, including but not limited to the amount due;

      e.      Defendant's false threat to initiate legal action violates 15 USC 1692e(5); and

      f.      Defendant's communication with Plaintiffs after being notified that Plaintiffs was represented by an attorney violates 15 USC 1692c(a)(2).

**RESPONSE:**

Denied.

107.    As a result of Defendant's violations of the FDCPA, Plaintiffs has suffered. actual damages, including emotional distress, and is also entitled to an award of statutory damages, costs, and attorney fees.

**RESPONSE:**

Denied.

## COUNT 10- MI FAIR DEBT COLLECTION PRACTICES ACT

108.    Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

109.    Defendant's above-referenced conduct constitutes multiple violations of the Michigan Occupation Code, and more specifically MCL 339.918, entitled Communication with consumer; notice; effect of disputing validity of debt; verification of debt; failure to dispute validity of debt.

**RESPONSE:**

Denied.

110.    Defendant's violations include, but are not limited to, the following:

30

a.     Defendant failed to properly and completely give the validation notice required by MCL 339.918;

b.     Defendant's false threat to initiate legal action violates MCL 339.915(e); and

c.     Defendant's communication with Plaintiffs after being notified that Plaintiffs was represented by an attorney violates MCL 339.915(h).

**RESPONSE:**

Denied.

111.    As a result of Defendant's willful violations of the State Act, Plaintiffs suffered actual damages, including emotional distress, and is entitled to an award of treble damages, statutory damages, costs, and attorney fees.

**RESPONSE:**

Denied.

## COUNT 11- BREACH OF CONTRACT

112.    Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

113.    As more fully set forth in the Common Allegations above, prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a HAMP modification package to Plaintiffs via overnight mail.

**RESPONSE:**

Denied.

31

114.     Plaintiffs have performed their obligations under the Contract, including but not limited to completing and submitting all required forms, proofs and requested documentation to Defendant; making all payments required by Defendant; and otherwise by <u>refraining</u> from exercising certain other rights, such as but not limited to ceasing to make any further payments on the account, filing for bankruptcy, placing the Property for Short Sale on the open market, etc.

**<u>RESPONSE:</u>**

Denied.

115.     Defendant has failed and/or refused to honor the terms of the Contract between the parties.

**<u>RESPONSE:</u>**

Denied.

116.     Plaintiffs have suffered damages as a proximate result of Defendant's breach of contract, in that their home, which is both a unique parcel of real estate and an item of sentimental value to Plaintiffs, will be foreclosed upon and sold at public auction sale, without judicial intervention.

**<u>RESPONSE:</u>**

Denied.

**<u>COUNT 12- PROMISSORY ESTOPPEL</u>**

117.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**<u>RESPONSE:</u>**

BANA incorporates by reference its responses to the preceding allegations.

32

118.    For approximately the past three years, Defendant has promised to place Plaintiffs in a permanent home loan modification, in exchange for the payments of various sums of money, and further in exchange for Plaintiffs <u>refraining</u> from exercising certain other rights, such as but not limited to ceasing to make any further payments on the account, given that it was going to be placed in foreclosure anyway, filing for bankruptcy, placing the Property for short sale on the open market, etc.

**<u>RESPONSE:</u>**

Denied.

119.    For approximately the past three years, Plaintiffs have detrimentally relied upon the promises of Defendant to permanently modify their mortgage loan, by paying the sums requested by Defendant, and otherwise by agreeing to <u>refrain</u> from exercising their other rights as described in the paragraph above.

**<u>RESPONSE:</u>**

Denied.

120.    Notwithstanding the promises of Defendant to Plaintiffs, and/or the detrimental reliance of the same by Plaintiffs, Defendant has never followed through on its promise to permanently modify their mortgage loan.

**<u>RESPONSE:</u>**

Denied.

121.    Plaintiffs have suffered damages as a proximate result of their detrimental reliance upon the broken promises of Defendant, in that they were tricked into making substantial unnecessary payments, and into refraining from exercising their above-referenced other rights on a home that Defendant planned to put into foreclosure anyway, all along.

Detroit_1133267_1

**RESPONSE:**

Denied.

122.    Finally, Plaintiffs have suffered and continue to suffer damages in that their home,
which is both a unique parcel of real estate and an item of sentimental value to Plaintiffs, is now
in foreclosure and will be lost on August 30, 2011, without judicial intervention.

**RESPONSE:**

Denied.

**COUNT 13- UNJUST ENRICHMENT**

123.    Plaintiffs hereby adopt and incorporate by reference each and every allegation
contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

124.    As more fully set forth within the Common Allegations above, Defendant has
received and retained unwarranted benefits from Plaintiffs, in the form of each and every
payment made since the date they requested modification under HAMP.

**RESPONSE:**

Denied.

125.    Under the circumstances, it is unfair that Defendant be permitted to keep any
sums paid by Plaintiffs for the past three years.

**RESPONSE:**

Denied.

**COUNT 14-INTENTIONAL FRAUD**

Detroit_1133267_1

126.    Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

127.    As more fully set forth within the Common Allegations above, from the date Plaintiffs first contacted Defendant to request assistance with their loan payments, and running through the Statutory Modification Process, agents of Defendant have represented to Plaintiffs that they would be granted a permanent modification under HAMP, if they qualified for the same, and if they refrained from exercising his other rights under the law, and continued to send payments.

**RESPONSE:**

Denied.

128.    But for those representations, Plaintiffs would not have made any further mortgage payments, and would have exercised other rights under the law.

**RESPONSE:**

Denied.

129.    Instead of following through on its representations, Defendant has fraudulently denied Plaintiffs' Michigan statutory modification request, and a foreclosure auction sale was scheduled.

**RESPONSE:**

Denied.

130.    But for the above-referenced representations, Plaintiffs would have filed suit in this matter **much** sooner than the date of filing of this Complaint.

Detroit_1133267_1

**RESPONSE:**

Denied.

131.    Defendant knew the representations were untrue at the time they were made, in that it had no intention of **ever** placing Plaintiffs into a permanent home loan modification under HAMP, no matter whether they qualified or not,

**RESPONSE:**

Denied.

132.    Defendants made the representations with the intention that Plaintiffs would rely upon them.

**RESPONSE:**

Denied.

133.    The representations were material, and were made, among other reasons, in order to induce Plaintiffs to fall behind in their mortgage, such that Defendant could foreclose, and essentially get bailed out at 100 cents on the dollar immediately from HUD, instead of waiting for 30 years of mortgage payments as it is contractually obligated to do.

**RESPONSE:**

Denied.

134.    Plaintiffs did, in fact, rely upon the representations, and their reliance was reasonable under the circumstances.

**RESPONSE:**

Denied.

135.    As a result of the foregoing, Plaintiffs has suffered and continue to suffer damages.

Detroit_1133267_1

**RESPONSE:**

Denied.

## COUNT 15- CONSTRUCTIVE FRAUD

136.     Plaintiffs hereby adopt and incorporate by reference each and every allegation contained in the above Paragraphs, as if fully set forth herein.

**RESPONSE:**

BANA incorporates by reference its responses to the preceding allegations.

137.     This Count of the Complaint is pled in the alternative to Count 14.

**RESPONSE:**

The allegations in paragraph 137 are legal conclusions to which no response is required.

138.     Defendant made the representations set forth in Count 14 above without a purposeful design to defraud Plaintiffs.

**RESPONSE:**

Denied.

139.     Nevertheless, the representations were false and induced Plaintiffs to participate in the transaction, and to refrain from exercising their rights on the other, to his detriment.

**RESPONSE:**

Denied.

140.     Plaintiffs have suffered and will continue to suffer damages as a result of the false representations of Defendant.

**RESPONSE:**

Denied.

## AFFIRMATIVE DEFENSES

BANA asserts the following affirmative defenses:

37

1.      Plaintiffs have failed to state a claim upon which relief can be granted.

2.      Plaintiffs' claims are barred, in part, by the applicable statutes of limitations.

3.      Plaintiffs' claims are barred, in part, by the Economic Loss Doctrine.

4.      Plaintiffs' claims are barred, in part, by the statute of frauds.

5.      Plaintiffs' claims are barred by reason of laches, waiver and estoppel.

6.      Plaintiffs' claims are barred by the doctrine of unclean hands.

7.      Plaintiffs have failed to allege their claims with specificity.

8.      Any statement made by BANA was privileged and/or true.

9.      Plaintiffs' damages, if any, were caused by the wrongdoing of others.

10.     Plaintiffs' damages, if any, were caused by them or their agent's own actions or inactions.

11.     Plaintiffs have failed to mitigate their damages.

12.     Plaintiffs committed the first material breach of any agreement.

13.     Plaintiffs' claims are barred because BANA acted in good faith to comply with all applicable rules and disclosure requirements.

14.     Plaintiffs' claims are barred by the doctrine of bona fide error because any error that may have occurred, all of which are denied, would have been unintentional and BANA acted at all times in good faith and maintained reasonable procedures to avoid such errors.

15.     Plaintiffs lack standing, including but not limited to standing to challenge the assignment of the Mortgage.

16.     BANA reserves the right to assert additional affirmative defenses that may become known to it through discovery or otherwise.

Detroit_1133267_1

Respectfully Submitted,

BODMAN PLC

By:  /s/__Christine E. Ficks_____
          Christine E. Ficks (P 64625)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI  48226
(313) 259-7777
*cficks@bodmanlaw.com*
Attorneys for Bank of America, N.A.,
successor by merger to BAC Home Loans
Servicing,

November 3, 2011


## CERTIFICATE OF SERVICE

The undersigned certifies that on November 3, 2011 the foregoing document was electronically filed with the Clerk of the Court for the United States District Court, Eastern District of Michigan using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.


BODMAN PLC

By:_  /s/ Christine E. Ficks_____
By:  Christine E. Ficks (P64625)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan  48226
(313) 259-7777
cficks@bodmanlaw.com
Attorneys for Defendant Bank of America, N.A.

Detroit_1133267_1