**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LARRY R. TALTON, II & STACIE C. TALTON,

       Plaintiffs,                              No. 2:11-cv-14512-DML-MKM

v.                                          Hon.  David M. Lawson

BAC HOME LOANS SERVICING, LP,

       Defendant.

---

### PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS

      Plaintiffs, Larry R. Talton and Stacie C. Talton, through their attorneys, Gantz Associates, hereby submit the following Brief in response to the Motion to Dismiss ("Motion") filed by Defendant, Bank of America, successor by merger to BAC Home Loans Servicing, LP ("Bank of America").

## STATEMENT OF ISSUES PRESENTED

1.      Whether Defendant's Motion should be treated as a Rule 56 Motion, although Defendant purportedly seeks relief pursuant to Rule 12b(6).

Plaintiffs' answer is "yes".

2.      Whether a Rule 56 Motion should be granted prior to the submission of initial disclosures and/or the commencement of discovery.

Plaintiffs' answer is "no".

3.      Whether Defendant's Motion actually satisfies the burden of **proof** that there is no genuine issue of material fact with respect to **any** of Plaintiffs' claims, and whether the burden is therefore **required** to **shift** to Plaintiffs, to submit evidence in response, especially where Defendant has not attached a copy of the Note to its Motion.

Plaintiffs' answer is "no".

4.      Whether mortgagors have standing to challenge an assignment of mortgage that they are not parties to, on the grounds that the document is void, as opposed to voidable, notwithstanding the Livonia Properties case.

Plaintiffs' answer is "yes".

5.      Whether the authority of an entity, such as MERS, to execute assignments of mortgages as nominee for the lender, expires upon the "death" of the lender as a corporate person?

Plaintiffs' answer is "yes".

6.      Whether a borrower may contact an attorney instead of a housing counselor to participate in Michigan's statutory modification process.

Plaintiffs' answer is "yes".

7.      Whether Defendant has waived any argument that a housing counselor is required in place and instead of an attorney, in order for a borrower to participate in the statutory modification process, given that Defendant put Plaintiffs and their attorneys through the **entire** statutory modification process.

Plaintiffs' answer is "yes".

8.      Whether Defendant has sufficiently shifted the burden of proof to Plaintiff, relative to its claim that the law firm of Trott & Trott is authorized to modify mortgages serviced by Bank of America.

Plaintiffs' answer is "no".

9.      Whether Defendant's Motion, styled as seeking to dismiss Plaintiffs' **entire** Complaint, **even addresses the claim contained within both Count 2 and the second part of Count 3**, relative to whether Defendant was required to cancel the sheriff's sale and instead conduct a judicial foreclosure.

Plaintiffs' answer is "no".

10.     Whether a forged assignment provides the assignee with authority to foreclose?

Plaintiffs' answer is "no".

11.     Whether Plaintiffs have stated a valid cause of action for violations of the Code of Federal Regulations.

Plaintiffs' answer is "yes".

12.     Whether Plaintiffs have stated a valid cause of auction to deny Defendant the equitable relief of foreclosure, based on the doctrine of unclean hands.

Plaintiffs' answer is "yes".

13.     Whether Plaintiffs have stated a valid cause of action for breach of contract relative to the implied duty of good faith and fair dealing.

Plaintiffs' answer is "yes".

14.     Whether the statute of frauds relative to financial institutions actually bars Plaintiffs' claims for intentional fraud, constructive fraud, and/or promissory estoppels.

Plaintiffs' answer is "no".

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to the requirements of Local Rule 7.1(c)(2), Plaintiffs state that Defendants have

styled their instant Motion as arising under Rule 12b(6), but Defendants have attached exhibits

iii

and made arguments outside the scope of the pleadings, including but not limited to the attachment of a certain contract arising by and between Defendants.

With respect to Motions filed under Rule 12b(6), the following precepts apply:

> **(d) Result of Presenting Matters Outside the Pleadings. <u>If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56</u>**. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(*See* Fed. R. Civ. P. 12d. **<u>Emphasis added</u>**.)

In addition to the foregoing, it is well established that "the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a Rule 56 motion for summary judgment." <u>Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.</u>, 452 F.3d 494, 503-04 (6th Cir. 2006).

The Motion was filed on January 6, 2012, after the issue had already been discussed during a Scheduling Conference. On December 12, 2011, after the Scheduling Conference but prior to the filing of the Motion, the Court entered an Order setting forth briefing deadlines, with no indication that the Court was rejecting the evidence submitted within Defendants' Motion. As such, it appears that the instant Motion is being treated by this Honorable Court as a Motion for Summary Judgment, and the same would therefore governed by Rule 56.

<u>**Rule 56 Motions are generally disfavored prior to the expiration of discovery**</u>. "Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin,* 538 F.3d 402, 420 (6th Cir.2008).

iv

In the instant action, counsel for Plaintiff attached an Affidavit hereto clearly establishing that Plaintiff intends to engage in discovery aimed at providing evidence in response to Defendants' Motion.  (*See* <u>Rule 56f Affidavit</u> – **Ex. "A"**.)

Summary judgment is proper only if there is no genuine issue as to **<u>any</u>** material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  Moreover, the Court must view **<u>all inferences</u>** to be drawn from the underlying facts in the light most favorable to the nonmoving party. <u>General Elec. Co. v. G. Siempelkamp GmbH & Co.</u>, 29 F.3d 1095, 1097-98 (6th Cir.1994).

**Under Rule 56(c) the moving party <u>always</u> has the initial burden of showing the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law.** See <u>Adickes v. Kress & Co.</u>, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). See generally 6 Moore P 56.15(3).

**If and <u>only</u> if the initial burden has been supported by additional materials**, the non-moving party must then come forward with specific facts which demonstrate to the court that there is a genuine issue for trial. **However, the fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted, because <u>the ultimate burden of proving the propriety of summary judgment remains on the moving party.</u>** See <u>Adickes v. Kress & Co.</u>, supra at 159-60, 90 S.Ct. 1598; <u>Fitzke v. Shappell</u>, 408 F.2d 1072 (6th Cir. 1972). As the Supreme Court observed in <u>Adickes v. Kress & Co.</u>, the Advisory Committee on the 1963 Amendments to Rule 56 expressly rejected the idea that subdivision (e) altered the ordinary standards of proof in a motion for summary judgment: **'(w)here the evidentiary matter in support of the motion does <u>not</u> establish the absence of a genuine issue, summary judgment must be denied <u>even if</u> no opposing evidentiary matter is**

**presented.'** 398 U.S. at 160, 90 S.Ct. at 1610 (emphasis in original), quoting Advisory Committee Notes on 1963 Amendment to Rule 56.

## STATEMENT OF FACTS

On April 25, 2008, the Mortgage and related Note at issue were executed between Plaintiffs and Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as "nominee" for the "Lender" and actual mortgagee, Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), and the Mortgage was recorded on May 13, 2008, in Liber 40299, Page 70, Oakland County Records. (*See* Mortgage – **Ex. "B"**.)

The loan was guaranteed and/or otherwise granted under the authority of the U.S. Department of Housing and Urban Development ("HUD"), and is therefore subject to HUD guidelines and the Code of Federal Regulations, as more fully discussed below.

TBW has **never** assigned its interest as mortgagee to US Bank **or any other person or entity**. In 2009, TBW closed its doors, went out of business, ceased to exist as a corporate entity, and otherwise "died" as a "corporate person", after being raided by the FBI, charged with fraud, and forced to stop making FHA loans. (*See* Tampa Bay Times; Better Business Bureau Review of TBW; and LARA Corporate Entity Details Re: TBW – **Ex. "C"**.)

For the past several years, Plaintiffs' loan has purportedly been serviced by BAC, although Plaintiffs challenge whether BAC was lawfully retained by TBW or any other entity to do the same. As a result of a recession caused in large part by Defendant's conduct throughout the past several years, like many citizens, most especially Michigan residents, Plaintiffs suffered a reduction in income. As a result of the same, Plaintiffs contacted the purported servicer of their loan, Defendant, BAC, and requested a HAMP and/or other modification.

Pursuant to HUD guidelines, as discussed below, Defendant was under a **strict**

**obligation** – far more than any non-HUD servicer, to do **anything and everything in its power** to modify the loan prior to the commencement of foreclosure proceedings.

Instead, in furtherance of a scheme to force performing loans into non-performing status, such that it could earn substantial, unwarranted servicing fees, including but not limited to a "foreclosure bonus", **Defendant strung Plaintiffs along quite literally for years**, in the HAMP modification process, including numerous bogus denials of HAMP modification although they qualified for the same. Defendant literally went from denying Plaintiffs' request for modification allegedly because Plaintiffs made too much money, to denying allegedly because Plaintiffs did not make enough money, to too much money, to not enough money, etc.

Finally, at one point, Defendant informed Plaintiffs they were approved for HAMP modification, and that a package would be coming in the mail, but the package never came, and when Plaintiffs contacted Defendant to inquire as to its status, they were informed that they allegedly waited too long to mail back the package that was never even sent to them in the first place, and as a result, their modification was canceled.

In approximately July, 2010, instead of modifying Plaintiffs' loan as absolutely required by HUD guidelines and therefore the Federal Code of Regulations as discussed below, Defendant hired the foreclosing law firm of Trott & Trott to illegally foreclose upon Plaintiffs. Trott & Trott's apparent first step in the foreclosure process was a failed attempt to clean up the mess caused by mortgagees over the past 15 years in utilizing MERS instead of recording assignments of mortgage in the offices of the local register of deeds, as discussed below.

Specifically, on August 10, 2010, more than two years after origination of the loan, and **more than two years after TBW "died" as a corporate person, thereby terminating any agency relationship, power of attorney and/or any other authority to act on its behalf**, an

7

employee of Trott and Trott, masquerading as a "Vice President" of MERS, based upon an alleged "Agreement for Signing Authority Dated 05/19/2009", executed a purported Assignment of MERS' rights in and to the mortgage to Defendant (the "Invalid Assignment"), and the same was in Liber 42344, Page 96, Oakland County Records.  (*See* Invalid Assignment – **Ex. "D"**.)

As discussed below, the Invalid Assignment is void, because it was executed by an attorney from Trott & Trott, purporting to act on behalf of MERS, which was purporting to act on behalf of TBW, more than two years **after** MERS' authority to act on behalf of TBW **expired** upon the "death" of TBW as a corporate person. Based on the foregoing, the purported Assignment did not provide Defendant with the authority to foreclose upon Plaintiffs' home.

On August 10, 2010, Defendant commenced the pre-foreclosure process. Plaintiffs therefore retained counsel, and spent the next several months participating in the statutory modification process, sending all documents required by Defendant's agent, the foreclosing law firm of Trott & Trott, and participating in a modification meeting pursuant to MCL 600.3205c, which based on their income, should have concluded with a permanent loan modification.

In fact, the statute requires that if a mortgagor qualifies for modification, but the foreclosing entity does not wish to modify, it loses the right to a cheap and easy foreclosure by sheriff's sale, and is required to file an expensive lawsuit for judicial foreclosure.

On April 8, 2011, Trott & Trott sent Plaintiffs a denial letter, which by statute was required to calculate Plaintiffs' income and expenses, and explain whether Plaintiffs qualified for statutory modification, which they did.  Instead, the denial letter was **intentionally vague**, indicating only "you have failed to satisfy one or more guideline requirements established by the investor on this loan. Consequently, the lender and/or servicer cannot offer you a loan modification. As a result of the fact that the loan is ineligible for modification, this office is

proceeding with foreclosure." (*See* <u>Illegal Denial Letter</u> – **Ex. "E".**)

The reason the letter was intentionally vague was that Plaintiffs qualified for modification, and Defendant knew it, but Defendant did not want to modify Plaintiff's loan, as the same was guaranteed by HUD, and Defendant was more interested in an immediate repayment of the entire mortgage loan from HUD, than in waiting for Plaintiffs to pay the same over 30 years, as Defendant's were contractually obligated to do.

## LAW AND ANALYSIS

**I.    Count 1 – No Proof of Ownership of Loan/Authority to Foreclose.**

**A.    Defendants' exhibits prove that TBW holds the Note, and therefore Bank of America has no authority to foreclose under MCL 600.3204(3).**

Defendants are claiming Bank of America conducted the foreclosure as the mortgagee. Meanwhile, **<u>Bank of America has attached to its Motion to Dismiss a copy of the Note, which was originally made payable to TBW, and which has never been endorsed, either to Bank of America, to any third party, or even in blank</u>**! As more fully discussed herein, TBW went out of business in 2009, and no longer exists to endorse the Note.

Pursuant to <u>In re Atl. Mortg. Corp.</u>, 69 B.R. 321, 325 (Bankr. E.D. Mich. 1987), under Michigan law, the following precepts apply:

> **<u>In Michigan law, a mortgage which has been severed from the corresponding promissory note does not entitle the mortgage holder to collect the indebtedness or to take possession of the real property</u>**. The Michigan Supreme Court has held:

> In natural justice and equity, the principal right of the mortgagee is to the money when due, and his right to the land is only as security for the payment of the money, the debt being merely collaterally secured by the mortgage on real estate.

> *Dougherty v. Randall,* 3 Mich. 581, 587 (1855), (Bank of Americang *Matthews v. Wallwyn,* 4 Ves. 128, and *Dudley v. Caldwell,* 18 Conn. 218.)

<div align="center">9</div>

More recently, that court has held:

> [T]he mortgage instrument, without any debt, liability or obligation secured by it, can have no present legal effect as a mortgage or an incumbrance upon the land.
>
> *Ginsberg v. Capitol City Wrecking Co.,* 300 Mich. 712, 717, 2 N.W.2d 892 (1942), quoting *Ladue v. Detroit & Milwaukee Railroad Co.,* 13 Mich. 380 (1865).

> Thus, if an investor's interest in the underlying debt is subordinate to the trustee's, the investor's superior interest in the mortgage does not give the investor any right to collect the debt. With the possible exception of those transactions involving sales of notes, rather than assignments for security, **there is no evidence of any debt owed directly from an original mortgagor to an investor**. The mortgage and assignment demonstrate that two distinct debts were intended—the mortgagor's debt to Atlantic and Atlantic's debt to the investor.

> **Consequently, the Court concludes that an investor without possession of the underlying note retains no rights incident to either the note or the mortgage. Any resulting lien on the real estate must be set aside in favor of the trustee, as the investor is merely an unsecured creditor of Atlantic.**

Given that, under "Michigan law, a mortgage which has been severed from the corresponding promissory note does not entitle the mortgage holder to collect the indebtedness or to take possession of the real property", it was truly frivolous for Defendant to file a Motion to Dismiss, attaching a copy of a Note which is payable to TBW and contains no endorsements to Bank of America, any third party, or even an endorsement in blank. As such, Defendant has failed to raise this issue sufficiently to shift the burden of proof to Plaintiffs, and Defendant's Motion must therefore be denied. (*See* Defendant's Motion, at pg. 7; Statement of Controlling Authority; Felix v. Young, 536 F.2d 1126 (6th Cir. 1976).)

**B.   Plaintiffs have standing to challenge the validity of the Assignment.**

Defendants argue that Plaintiffs have failed to identify defects in the foreclosure, given that MERS has the authority to assign mortgages as nominee for the mortgagee, and further

10

given that since Plaintiffs are not parties to the Assignment, they allegedly do not have the right to challenge its validity.  In making this argument, Defendant relies almost exclusively upon Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F.Supp. 2d 724, 737 (E.D. Mich. 2010). (*See* Defendant's Motion, at pgs. 5-7.)

**However, a simple analysis of Livonia Property conclusively proves that mortgagors may challenge an assignment of mortgage on the grounds that the document is absolutely void, but may not challenge the validity of an assignment of mortgage on the grounds that it is merely voidable**. Livonia Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C., 717 F. Supp. 2d 724, 735-36 (E.D. Mich. 2010), (further citations withheld for brevity).

Obviously, the next step in the analysis of Plaintiffs' claims is a determination as to whether Plaintiffs are seeking to establish that the Invalid Assignment is absolutely void, at which point they would have standing to raise the claim pursuant to Livonia Property, or whether Plaintiffs are seeking to establish that the Invalid Assignment is merely voidable, at which point Plaintiffs would agree with Defendant that Livonia Property would appear to bar their claims.

It is Plaintiffs contention, as more fully discussed below, that the Invalid Assignment was, in the eyes of the law, "forged" by an attorney from the foreclosing law firm of Trott & Trott, who was purporting to act as an agent for MERS, which was in turn purporting to act as an agent for TBW, which had long since "died" as a corporate person, taking with it to the grave any signing authority it may have previously granted to MERS.

It is well established that an agency relationship and/or power of attorney immediately terminates upon the death of the principal.  Restatement Agency, 2d, § 120(1), see also comment (a), and illustration (1); Vanderwall v. Midkiff, 166 Mich.App 668, 677-678; 421 NW2d 263 (1988), appeal after remand on other grounds (1990).

The case of <u>Hynes v. Halstead</u>, 282 Mich. 627, 276 N.W. 578 (1937) is instructive, especially in light of Defendant's argument that MERS has authority to record Assignments pursuant to an Attorney General Opinion authorizing the recording of such documents by a "nominee of a disclosed or undisclosed mortgage".  (*See* <u>Defendant's Motion</u>, at pg. 5.)

In <u>Hynes</u>, the Supreme Court of Michigan not only discussed the fact that the agency relationship terminates upon the death of the principal, it also makes it clear that "the agency of a depositary", such as MERS, to "deliver a deed" (presumably in the manner authorized by the Attorney General Opinion cited by Defendants) "ceases with death of grantor", as follows:

> **If there was no delivery until after death of the grantor, the deed would be ineffectual.** To be made operative after death, it must have been made effectual during the lifetime of the grantor. **The agency of a depositary to make delivery for the grantor ceases with the death of the grantor**. (<u>Id</u>, at 634.) (**Emphasis added**.)

Based on the foregoing, even if the Court were to accept that an Assignment by a "nominee" of the mortgagee is as good as an Assignment by the mortgagee, it is clear that any such Assignment would have to occur while the nominee still had the authority to execute documents on behalf of the mortgagee, i.e. before the agency relationship and/or power of attorney expired, on the "death" of TBW, in 2009. (*See* <u>Tampa</u> Times; <u>Better Business Bureau Review of TBW</u>; and <u>LARA Corporate Entity Details Re: TBW</u> – **Ex. "C"**.)

In <u>McGinn v. Tobey</u>, 62 Mich. 252, 259-60, 28 N.W. 818, 820 (1886), **the Supreme Court of Michigan answered the question as to whether a document executed on behalf of a deceased person without authority is to be considered "forged", and therefore absolutely void, as opposed to voidable, under Michigan law**, as follows:

> **But we consider this deed clearly a forgery, under the best definitions of that offense**…. **It is the "fraudulent making and alteration of a writing, to the prejudice of another man's rights."… The signature to this instrument is genuine, but the**

12

**body of the deed is false**, and the signing of complainant's name, without knowledge of such falsity, cannot cure it, and make it a true and valid instrument in the hands of any one. **A genuine signature cannot change the character of an instrument of this kind, unless the intent to do so goes with the signature**. (**Emphasis added**.)

Based upon the foregoing, although the signature on the Invalid Assignment is genuine, it is genuinely merely the signature of an attorney from a foreclosing law firm, acting on behalf of an agent whose authority had long since expired upon the death of the principal, and as such, the document is a forgery, and is therefore void.

Similarly, in the more recent <u>Fair v. Moody</u>, 278906, 2008 WL 5382648 (Mich. Ct. App. Dec. 23, 2008), the Court of Appeals impliedly held that the holder of a forged Assignment is void and confers no rights, such as the right to conduct a foreclosure, upon the holder, as follows:

> **When a deed is forged, those ostensibly acquiring an interest under the forged deed, even innocently, are in no better position with respect to title than if the acquisition of the interest was with notice of the forger**y…. **There is no such thing as a bona fide holder under a forged deed, whose good faith would confer a right against the party whose name was forged, or those claiming under him or her**….**Therefore, LaSalle cannot rely on the deed, new mortgage, or any closing documents as against plaintiffs to establish an enforceable mortgage**.

In addition to the foregoing, in <u>Robinson v. Bus. Funding Corp.</u>, 225815, 2002 WL 31956967 (Mich. Ct. App. Dec. 20, 2002), the Michigan Court of Appeals discussed that in instances such as these, the following precepts apply:

> **Under Michigan law a forged signature on a mortgage renders it void and unenforceable**. *McGinn v. Tobey,* 62 Mich. 252; 28 NW 818 (1886); see also 17 Mich. Civil Jur, Mortgages, § 27, p 573 ("**A mortgage is a nullity if the signature of the mortgagor is a forgery, and the lien will be voided since it is predicated on a forged conveyance**," Bank of Americang *McGinn, supra,*) and *id.,* § 101, p 643 ("A forged mortgage is no mortgage and a nullity," Bank of Americang *LaPrad v. Sherwood,* 79 Mich. 520; 44 NW 943 (1890), *Waterbury v. Andrews,* 67 Mich. 281; 34 NW 575 (1887), and *Camp v. Carpenter,* 52 Mich. 375; 18 NW 113 [1884].)

> "**There can be no such thing as a *bona fide* holder under a forgery, whose good faith gives him any rights against the party whose name has been forged or his heirs.**" *Austin v. Dean,* 40 Mich. 386 [1879].

**The *Horvath* rule has been applied to mortgages, as well as deeds**. See e.g., *Matthews v. Aluminum Acceptance Corp,* 1 Mich.App 570, 576; 137 NW2d 280 (1965).

In Robinson, the Michigan Court of Appeals discussed the fully binding and rather instructive authority derived from the factually similar case of VanderWall v. Midkiff, 166 Mich.App 668; 421 NW2d 263 (1988), which is absolutely crucial to this Honorable Court's determination of Defendant's Motion, as follows:

**In *VanderWall v. Midkiff,* 166 Mich.App 668; 421 NW2d 263 (1988), Gelderloos, who subsequently died intestate, gave power of attorney to one of his stepdaughters, Rowbotham. Rowbotham signed a deed in Gelderloos' name to the family home and cottage, without indicating she was doing so pursuant to a power of attorney, and transferred it to one of her siblings, Midkiff**. Midkiff sold the home to the Rays. Gelderloos' nephew, VanderWall, brought suit. **The jury concluded that Rowbotham had not acted under Gelderloos' direction, and the trial court ordered transfer of title to the home to the Rays. Regarding title to the home, this Court concluded:**

**There can be no such thing as a bona fide holder under a forged deed, whose good faith confers any rights against the party whose name has been forged, or those claiming under him. Where a deed is forged, those innocently acquiring interests under the forged deed are in no better position as to title than if they had purchased with notice. It cannot be disputed that the signature of Gelderloos on the quitclaim deed to Midkiff was forged. Rowbotham admitted that it was she, and not Gelderloos, who signed his name to the deed. Although Rowbotham claimed that she acted at the direction of Gelderloos, the jury found otherwise.**

Based on the foregoing, it is clear that Plaintiffs have standing to challenge the foreclosure, which is based on an absolutely void Assignment, notwithstanding the Livonia Property ban on third parties seeking to invalidate merely voidable assignments of mortgage. Livonia Property; McGinn; 17 Mich. Civil Jur, Mortgages, § 27, p 573; LaPrad; Camp; Zaino; Horvath; Austin; Matthews; and VanderWall.

**II.    Counts 2 & 3 – Violation of MI Foreclosure by Advertisement/Statutory Modification Statute.**

    **A.    The statute at issue <u>specifically</u> authorizes borrowers to utilize <u>either</u> housing counselors <u>or</u> attorneys to represent their interests throughout the statutory modification process.**

In attacking Plaintiffs' claims for violation of the Michigan foreclosure by advertisement statute, and statutory modification laws, Defendant's first claim is **the truly frivolous and sanctionable argument** that the Court is required to interpret MCL 600.3205a as requiring that if a borrower seeks to take advantage of the statutory modification process, the **only** way they could do so would be by contacting a housing counselor – a claim made by the rather disingenuous quoting of favorable portions of statutory law to the Court, while shielding unfavorable portions of the same statute.  (*See* <u>Defendant's Motion</u>, at pgs. 7-8.)

In this frivolous and sanctionable portion of its Brief, Defendant seeks to "educate" the Court on manner in which a borrower may exercise their right to a review for modification prior to publication for foreclosure, as follows:

> First, plaintiffs have failed to aver that MCL 600.3205c applies here.  A borrower "***wish[ing] to participate in negotiations to attempt to work out a modification of a mortgage loan shall contact a housing counselor from the  list provided under [MCL 600.3205a] within 14 days after the list is mailed to the borrower."  MCL 600.3205(b)(1)(emphasis added). MCL 600.3205c only applies "[i]f a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan***."  MCL 6003.205c(1). In that event, "***the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification."….
>
> … plaintiffs admit that they did not contact a MSHDA approved housing counselor, but rather, retained an attorney and contacted Trott & Trott directly.  Accordingly, BANA's obligations under MCL 600.3205c were never triggered…."

What makes Defendant's argument so frivolous and sanctionable is that the statute **so selectively quoted by Defendant actually** states as follows:

> (1) (1) Subject to subsection (6), before proceeding with a sale under this chapter of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, the foreclosing party shall serve a written notice on the borrower that contains all of the following information:
>
> (d) That enclosed with the notice is a list of housing counselors….

**(h) That the borrower has the right to contact an attorney, and the telephone numbers of the state bar of Michigan's lawyer referral service and of a local legal aid office serving the area in which the property is situated**.

Clearly, counsel for Defendant **knew** the statute containing section (d) authorized borrowers to utilize the equivalent of public defenders in criminal matters, i.e. free housing counselors, just a few sentences later contained section (h), allowing borrowers to go above and beyond and hire an attorney to represent them throughout the statutory modification process, in an attempt to get the best possible result. As such, Defendant's Motion must not only be denied pursuant to MCL 600.3204(1)(h), but in addition, sanctions are appropriate.

B.   **Defendant has waived any argument that Plaintiffs did not properly exercise their right to participate in the statutory modification process, by actually putting Plaintiffs through the entire statutory modification process.**

Defendant next claim since Plaintiffs used an attorney as opposed to a housing counselor, "BANA's obligations under MCL 600.3205c were never triggered, and thus, there is no basis for Plaintiff's claim for violation of MCL 600.3205c." (*See* Defendant's Motion, at pg. 8.)

As defined by the Supreme Court of Michigan, "waiver" connotes an intentional abandonment of a known right. Roberts v. Mecosta County Gen. Hosp., 466 Mich. 57, 642 N.W.2d 663 (2002) (quoting People v. Carines, 460 Mich. 750, 597 N.W.2d 130 (1999)). *See also* Houston v. Twp. of Davison, 281708, 2009 WL 763503 (Mich. Ct. App. Mar. 24, 2009).

Accordingly, to the extent that such an argument would be valid, which Plaintiffs have proven is **not** the case above, Defendant has **waived** the right to such argument, **by actually conducting the MCL 600.3205 process between Plaintiffs and their attorneys on the one hand, and Trott & Trott on the other, from the absolute beginning to the bitter end**. (*See* Attorney's Request for 90 Day Hold – **Ex. "F"**; Trott & Trott Financial Package Mailed to

16

<u>Attorneys, Accepting Attorney's Request to Lock in 90 Day Hold</u> – **Ex. "G"**; <u>Attorney's Notes</u> <u>from MCL 600.3205c Meeting with Trott & Trott and Bank of America</u> – **Ex. "H"**.)

Clearly the above course of conduct constitutes a waiver of any claim that MCL 600.3205 et seq requires the use of housing counselors in place and instead of attorneys, and Defendant's Motion must therefore be denied. (*See* <u>Roberts</u>; <u>Carines</u>; <u>Houston</u>).

**C.    Defendant has not supported its conclusory allegation that Trott & Trott is authorized to modify mortgages serviced by Bank of America.**

In the first part of Count 3, Plaintiffs challenge the foreclosure for two related reasons, i.e. (i) that the foreclosing law firm did not satisfy statutory requirements to designate a person **<u>authorized to modify</u>** Plaintiffs' loan, when the foreclosing law firm named itself, which did **<u>not</u>** have authority to modify Plaintiffs' loan, and (ii) that the foreclosing law firm did not make the person **<u>authorized to modify</u>** Plaintiffs' loan, which was Freddie Mac, **<u>available</u>** to **<u>work</u>** with Plaintiffs in an attempt to modify the loan. (*See* <u>Complaint</u>, at Paragraphs 58-68.)

Defendant has sought to dismiss this claim based on **<u>nothing more than the conclusory</u>** **<u>allegations of its attorney</u>**, that the foreclosing law firm of Trott & Trott is authorized to approve or reject Plaintiffs' loan modification request.  (*See* <u>Defendant's Motion</u>, at pgs. 8-9.)

Unsupported statements by counsel for Defendants do not satisfy Defendant's burden of proof, and Defendants' Motion must therefore be denied without any further consideration.  (*See* <u>Statement of Controlling Authority</u>; <u>Felix v. Young</u>, 536 F.2d 1126 (6th Cir. 1976).)

**D.    Defendant <u>has not addressed</u> Counts 2 and 3 claiming that Defendant was required to conduct a judicial foreclosure instead of sheriff's sale.**

Defendant seeks to dismiss Plaintiffs' entire Complaint. However, within Count 2 and the latter part of Count 3, Plaintiffs raise a claim that went unaddressed by Defendant – that under Michigan law, when a lender refuses to modify the loan of a borrower who qualifies for the

17

relief, the lender loses the right to conduct a sheriff's sale, and must instead foreclose judicially, and if the lender violates this portion of the statute, the borrower has a private right of action to file a lawsuit to challenge the foreclosure. (*See* <u>Complaint</u>, at Paragraphs 55-72.)

Since Defendant has not argued for the dismissal of Count 2 or this portion of Count 3, these Counts cannot be dismissed in response to Defendant's Motion. (*See* <u>Defendant's Motion</u>, at pg. 8; <u>Statement of Controlling Authority</u>; <u>Felix v. Young</u>, 536 F.2d 1126 (6th Cir. 1976).)

**III.     Count 5 – Declaratory Relief – Failure of Condition Precedent – CFR.**

Defendant next challenges Count 5, wherein Plaintiffs seek a judicial declaration that Defendant is not entitled to the equitable relief of foreclosure, based on <u>Manufacturer's Hanover Mortgage Corp. v. Snell</u>, 142 Mich. App. 548 (1985), which held that violations of the HUD handbook do not give rise to a private right of action. (*See* <u>Defendant's Motion</u>, at pg. 10.)

However, in <u>In re Estate of Olson</u>, 283818, 2009 WL 3103841 (Mich. Ct. App. Sept. 29, 2009), the Court of Appeals held as follows:

> **We also reject UMC's argument that the trial court's discussion of *Manufacturers Hanover Mortgage Corp. v. Snell*, 142 Mich.App 548, 554-556; 370 NW2d 401 (1985) in its original opinion and order somehow renders the court's subsequent decision improper. In its original opinion and order, the trial court relied on Hanover for the proposition that a violation of HUD guidelines does not give a mortgagor an independent cause of action to void the mortgage. This finding was not contrary to the trial court's subsequent equitable ruling that UMC is not entitled to the double benefit of having its loan insured by the Federal Housing Administration while also retaining the ability to foreclose on excess land. Stated otherwise, a violation of HUD guidelines does not void a mortgage, but neither does it prevent the grant of equitable relief when the facts warrant it.** Id. (**Emphasis added**.)

Plaintiffs are not seeking to void their Mortgage. They seek a declaration that Bank of America is not **currently** entitled to the equitable relief of foreclosure, because it has not **yet** complied with HUD regulations requiring all efforts be undertaken to modify the loan and avoid foreclosure. (*See* <u>Complaint</u>.) As such, Defendant's Motion must be denied. (*See* <u>Olson</u>.)

18

**IV.     Count 7 – Declaratory Relief – Foreclosure Barred by Unclean Hands.**

Defendant next challenges Count 7, arguing that the claim is "redundant", without explaining exactly what it is redundant with, how, and why. Defendant has therefore not shifted the burden, and Defendant's Motion must be denied. (*See* Defendant's Motion, at pg. 12; Statement of Controlling Authority; Felix v. Young, 536 F.2d 1126 (6th Cir. 1976).)

**V.     Count 8 – Breach of Contract – Implied Duty of Good Faith and Fair Dealing.**

Defendant next contends "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing", citing Fodale v. Waste Mgt. of Mich., Inc., 271 Mich App 11, 35; 718 NW2d 827 (2006).  (*See* Defendant's Motion, at pg. 13.)

Again, Defendant seeks to obscure the facts from the Court.  As set forth in ParaData Computer Networks v. Telebit Corp., 830 F. Supp. 1001 (E.D. Mich. 1993), Michigan courts **do** recognize a claim for breach of the implied duty of good faith and fair dealing, as follows:

> **Michigan courts will recognize an action for breach of an implied covenant of good faith and fair dealing where "a party to a contract makes the manner of its performance a matter of its own discretion."** Burkhardt v. City National Bank of Detroit, 57 Mich.App. 649, 652, 226 N.W.2d 678, 680 (1975). (**Emphasis added.**)

Plaintiffs' Complaint was **specifically tailored to fit this exception**. (*See* Complaint, at Paragraphs 101-104.)  Plaintiffs' Complaint was narrowly drafted, and sets forth an enforceable claim for breach of the implied duty of good faith and fair dealing, in an instance in which the Defendants had the discretion to make determinations relative to mortgage modification, and as such, Defendants' arguments to the contrary must be rejected.  (*See* Burkhardt; Paradata.)

**VI.     Counts 12, 14 & 15 - Promissory Estoppel, Fraud and Constructive Fraud.**

Defendants next quote the statute of frauds relative to financial institutions, as well as Crown Technology Park v. D&N Bank, FSB, 242 Mich. App. 538; 619 NW2d 66 (2000), both of

19

which **merely** bar **breach of oral contract claims**, albeit no matter how they are entitled. Defendants claim that this statute applies to **fraud and promissory estoppel claims**, as well.

First, the statute only bars parties from seeking to "enforce" oral contracts, and is therefore inapplicable to this case. (*See* MCL 566.132(2); and Crown Technology.) In other words, Plaintiffs are not seeking to "enforce" the terms of an alleged oral promise to modify the loan. On the contrary, they are challenging the validity of a foreclosure **based on, and would never have occurred without, the alleged oral promises to modify the loan.**

Second and perhaps even more importantly, Defendants' selective citation of case-law attempts to mislead the Court into extending the Statute of Frauds **far** beyond its intended scope.

For example, Defendants failed and/or refused to cite El-Seblani v. OneWest, FSB, 11-11178, 2011 WL 6309155 (E.D. Mich. Dec. 15, 2011, where the Court impliedly held that a fraud claim could be stated, notwithstanding the statute of frauds, but that since **that** Plaintiff was offered a modification but did not accept within the requisite time-frame, **he** did not state a valid claim, "[b]ecause Plaintiff failed to accept within the time provided by the offer, OneWest was not bound by those promises. Failure to perform such obligations cannot constitute fraud."

In the instant action, there are no allegations that the Plaintiff failed to accept an offer of modification, and as such, Plaintiffs are entitled to pursue their fraud claims against Defendants.

Defendant further failed and/or refused to cite Benford v. CitiMortgage, Inc., 11-12200, 2011 WL 5525942 (E.D. Mich. Nov. 14, 2011, wherein the Court impliedly held there are circumstances in which a misrepresentation case **could** be made, notwithstanding the statute of frauds, but the Plaintiff in **that** case did not meet the burden, because he did not show this reliance on the allegedly false statement was reasonable. Id.

In the instant action, Plaintiffs have shown that their reliance upon the fraudulent misrepresentations regarding a loan modification was reasonable. As such, they have succeeded where the Plaintiffs in <u>Benford</u> failed, and Defendants' Motion must therefore be denied.

Similarly, Defendant failed and/or refused to cite <u>Indus. Maxifreight Services, LLC v. Tenneco Auto. Operating Co., Inc.</u>, 182 F. Supp. 2d 630, 632-33 (W.D. Mich. 2002), the Court **eviscerated** Defendants' arguments herein, as follows:

> Defendant Tenneco contends that the doctrine of promissory estoppel should not be used to circumvent the statute of frauds in real property cases….
>
> **<u>This Court cannot find, based simply upon the separation of powers dictum in <em>Crown Technology</em>, that the Supreme Court is prepared to reject the well-established principle that promissory estoppel can be used, in some cases, to circumvent the application of the statute of frauds</u>**. (**<u>Emphasis added</u>**.)

Based on the foregoing binding case-law, the inquiry into whether Plaintiff has stated a claim for intentional and/or constructive fraud and/or promissory estoppel, does not end with the statute of frauds relative to financial institutions, as alleged by Defendants, and Defendants' Motion must therefore be denied. (*See* <u>El-Seblani</u>; <u>Benford</u>; and <u>Indus. Maxifreight Services</u>.

## <u>CONCLUSION AND REQUEST FOR RELIEF</u>

Defendants have filed a premature and frivolous Motion, which must be denied, and an award of sanctions is warranted.

<div style="margin-left:50%">

Respectfully submitted:

**GANTZ ASSOCIATES**

</div>

Dated: January 22, 2012

<div style="margin-left:50%">

/s/ Adam J. Gantz
By: ADAM J. GANTZ (P58558)
Counsel for Plaintiff

</div>

<u>**CERTIFICATE OF SERVICE**</u>

Adam J. Gantz hereby certifies that on January 22, 2012, I electronically filed the foregoing Plaintiff's Brief in Response to Defendants' Motion to Dismiss with the Clerk of the Court utilizing the ECF systems, which will automatically send notice of such filing to all attorneys of record:

I further certify that I did not serve this document on any party via First Class Mail.

Respectfully submitted:

**GANTZ ASSOCIATES**

Date: January 22, 2012          By:     /s/ Adam J. Gantz
                                        ADAM J. GANTZ (P58558)
                                        Counsel for Plaintiff