UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY R. TALTON and STACIE C.
TALTON,

                  Plaintiffs,

                                        Case No. 11-14512
v.                                    Honorable David M. Lawson

BAC HOME LOANS SERVICING LP,

                  Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

      The plaintiffs, Larry and Stacie Talton, brought an action against the defendant, BAC Home

Loans Servicing, in part to stop the foreclosure on their residence at 28885 Ranchwood Drive, Unit

#7, Southfield, Michigan. They originally filed their fifteen-count complaint in the Oakland County,

Michigan circuit court. After the defendant removed the case to this Court on diversity of

citizenship grounds, the defendant filed a motion to dismiss. At oral argument on the motion on

January 31, 2012, the plaintiffs conceded the invalidity of five of the counts. The Court now

concludes that the remaining counts must be dismissed as well, although some of them, which could

conceivably be saved by better pleading (which has not been requested), will be dismissed without

prejudice.

I.

      According to the complaint, on April 25, 2008, plaintiffs Larry and Stacie Talton obtained

a mortgage loan from Taylor, Bean & Whitaker Mortgage Corporation (TBW) in the amount of

$187,271. The plaintiffs signed a promissory note requiring monthly principal and interest payments

of $1,153.06. The note also included an acceleration clause that was triggered by the plaintiffs'

failure to make a timely and full monthly payment.  As security for the loan, the plaintiffs granted

a mortgage on the Ranchwood property to Mortgage Electronic Registration Systems, Inc. (MERS)

solely as nominee for TBW and its successors and assigns.  The mortgage granted MERS, as

nominee of the lender, a power of sale.  The mortgage expressly states that the plaintiffs:

> "understand[ ] and agree[ ] that MERS holds only legal title to the interests granted
> by [plaintiff] in this Security Instrument, but, if necessary to comply with law or
> custom, MERS (as nominee for Lender and Lender's successors and assigns) has the
> right: to exercise any or all of those interests, including, but not limited to, the right
> to foreclose and sell the Property; and to take any action required of Lender
> including, but not limited to, releasing and canceling this Security Instrument."

Mot. to Dismiss, Ex. C, Mortgage at 2.

The mortgage was "granted under the authority of the U.S. Department of Housing and

Urban Development (HUD)."  Compl. ¶ 9.  The plaintiffs allege that BAC Home Loans Servicing

has serviced the Loan for several years, and that TBW never assigned its rights as mortgagee to any

other person or entity.  The defendant has produced a copy of the assignment of MERS's interest

in the mortgage to BAC Home Loans Servicing, which was signed on August 10, 2010 by Kenneth

Kurel on behalf of MERS pursuant to a signing authority agreement, and recorded by the Oakland

County register of deeds on September 1, 2010.  Kenneth Kurel is a partner at Trott & Trott, the firm

hired by the defendant to foreclose the plaintiffs' mortgage.  The assignment states that:

> [MERS] as nominee for Lender and Lenders successors and/or assigns . . . has sold,
> assigned and transferred, and does hereby sell, assign and transfer to [BAC Home
> Loans Servicing, L.P.], all the right, title and interest of [MERS] in and to a certain
> real estate mortgage made by Larry R. Talton II and Stacie C. Talton.

Mot. to Dismiss, Ex. D, Assignment of Mortgage.

The plaintiffs allege that they suffered a reduction in income due to "a recession," and they

contacted the defendant to request a Home Affordable Modification Program (HAMP) loan

-2-

modification. The plaintiffs allege that the defendant "strung [them] along quite literally for years, in the HAMP modification process, including numerous fraudulent and otherwise bogus denials of HAMP modification although they qualified for the same." Compl. ¶ 15. As an example, the plaintiffs allege that the defendant oscillated at least four times between denying the plaintiffs' request because they made too much money and denying it because they did not make enough money.

At some point after being rejected multiple times, the defendant allegedly told the plaintiffs that they qualified for a HAMP modification and a package would be coming in the mail. However, the HAMP modification package never came. The plaintiffs allege that the defendant told them they waited too long to mail back the package, and the application for the HAMP modification was canceled.

The complaint does not state when or whether the plaintiffs stopped making timely and complete monthly mortgage payments. The plaintiffs do allege that they paid the substantial sums of money requested by the defendant, but were told that the mortgage on their home would be foreclosed regardless of those payments. The plaintiffs also allege that the defendant failed to provide a face-to-face meeting to resolve any default before they fell three months behind on their mortgage payments. Although the exact circumstances of the plaintiffs' default are unclear, it appears that the plaintiffs defaulted at some point in time, sought a loan modification, and continued to make less-than-complete payments each month in the hope that the defendant would approve their request for a loan modification.

The defendants hired the law firm of Trott & Trott to foreclose the mortgage. One of Trott & Trott's first acts was to record the assignment of MERS's interest in the mortgage to BAC Home

Loans Servicing.  Defendant BAC began preparations to foreclose by advertisement on August 10,

2010, when Trott & Trott mailed a 14-day notice to plaintiffs.  That notice, although referenced in

the complaint, was not attached to the pleading.  However, the defendant furnished a copy with its

motion to dismiss.  The notice states:

> This notice is being sent to the borrowers and/or mortgagors pursuant to MCL 600.3205a(1) pertaining to the mortgage for property located at 28885 Ranchwood Dr Unit 7, Southfield, MI 48076-2465.  The mortgage loan is in default for non-payment.  As of the date of this notice, the total amount due and owing under the mortgage loan is $189,502.75.

> Trott & Trott, P.C., represents BAC Home Loans Servicing, L.P., which is the creditor to which your mortgage debt is owed or the servicing agent for the creditor to which the debt is owed.

> The agent designated by the Mortgage Servicer and/or Mortgage Holder to contact and that has authority to make agreements under MCL sections 600.3205b and 600.3205c is:

> Trott & Trott, P.C. 31440 Northwestern Highway, Suite 200, Farmington Hills MI 48334-2525 at (248) 593-1302 or fax written requests to (248) 205-4130 and reference T&T # 337477F01

> Enclosed with this notice is a list of housing counselors prepared by the Michigan State Housing Development Authority (MSHDA).  Within 14 days of the date of this notice, you may request a meeting with the agent designated above to attempt to work out a modification of the mortgage loan to avoid foreclosure by contacting a housing counselor from the list provided with this notice.  You may also request a housing counselor to attend the meeting.

> If you request a meeting with the agent designated above by contacting a housing counselor from the list provided with this notice within 14 days of the date of this notice, foreclosure proceedings will not be commenced until 90 days after the date of this notice.  For this provision to be applicable, the request for a meeting must be made despite any independent loss mitigation options you may be pursuing with your lender.

> If you and the agent designated above reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if you abide by the terms of the agreement.

Mot. to Dismiss, Ex. E, August 10, 2010 Letter.

-4-

The plaintiffs do not allege that they requested a meeting with BAC Home Loans Servicing's designated representative, Trott & Trott, by contacting a housing counselor from the list provided with the notice within 14 days of the date of the notice. Rather, they allege that they retained a lawyer and "participated in the Michigan statutory modification process." Compl. ¶ 26. The correspondence from the plaintiffs' lawyer, however, does not bear that out. Instead of contacting a housing counselor, as the statute directed at the time, on August 21, 2010, plaintiffs' counsel sent a letter to Trott & Trott that stated:

> This office represents the borrower(s), with regard to the above-referenced matter. As such, please direct all future correspondence regarding this matter to my attention.
>
> In addition, please accept this correspondence as a formal request for a meeting pursuant to MCL 600.3205b.

Resp., Ex. F, Aug. 21, 2010 Letter from Gantz to Trott & Trott. Trott & Trott replied to plaintiff's counsel on September 16, 2010 in a letter that stated, among other things:

> You, a co-mortgagor, or an approved housing counselor have requested a meeting with a designate of the servicer and/or lender to discuss loan modification and/or loss mitigation options, relative to the above-referenced property. As a result, the foreclosure process will not continue until on or after November 8, 2010.

Resp., Ex. G, Sept. 16, 2010 Letter from Trott & Trott to Plaintiff's counsel.

On April 8, 2011, plaintiffs were provided notice that they did not qualify for a loan modification and that BAC Home Loans Servicing would be proceeding with foreclosure. The plaintiff alleges that the defendant took eight months to review their request, as opposed to 90 days, because it "was reeling from the 'robo-signing' scandal it was implicated in and needed several months to figure out how to foreclose on properties." Compl. ¶ 27. The plaintiffs also allege that the defendant denied their modification request, even though they qualified, because the defendant

wanted an immediate repayment of the entire loan from HUD. The plaintiffs challenged the defendant's denial, and the defendant allegedly agreed to continue its review of the loan modification application. To that end, the defendant requested several additional documents from the plaintiffs between April and July 2011. The plaintiffs allege that they provided all of the requested documentation in the manner and within the time frame required by the defendant. To date, the plaintiffs have not received a loan modification.

It is unclear when the defendant published the first foreclosure notice required by state law, although presumably that occurred at least four weeks before August 30, 2011, the date on which the original sheriff's sale was scheduled. The defendant represents that the sheriff's sale has been stayed until this case is decided.

On August 25, 2011, the plaintiffs filed suit against the defendant in the Oakland County, Michigan circuit court, alleging that the defendant: violated Michigan's foreclosure by advertisement statute by relying on an invalid assignment (Count 1); violated Michigan's foreclosure by advertisement statute by commencing foreclosure when the plaintiffs were eligible for a loan modification (Count 2); violated the Michigan loan modification statute by failing to designate a person authorized to enter a loan modification agreement (Count 3); violated Michigan's Mortgage Brokers, Lenders, and Servicers Licensing Act (Count 4); violated several federal regulations, including violation of 24 C.F.R. § 203.604 (Count 5); violated Michigan's Truth In Lending Act (Count 6); has unclean hands and thus cannot seek equitable foreclosure (Count 7); breached an implied duty of good faith and fair dealing (Count 8); violated the federal Fair Debt Collection Practices Act (Count 9); violated the Michigan's Collection Practices Act (Count 10); breached a contract supposedly made during the HAMP modification process (Count 11); is estopped from

-6-

denying the modification because of the plaintiffs' detrimental reliance (Count 12); was unjustly enriched (Count 13); committed intentional fraud (Count 14); and committed constructive fraud (Count 15).

The defendant removed the case on the basis of federal question and diversity jurisdiction on October 13, 2011 and filed the present motion to dismiss six days later. The plaintiffs filed an untimely response to the motion.

II.

At oral argument on the motion, the plaintiffs conceded the invalidity of their claims in counts 4, 6, 9, 10, and 13. Those counts will be dismissed with prejudice.

The plaintiff argues that because the defendant attached documents to its motion to dismiss and therefore referred to matters outside the pleadings, the motion should be converted to one for summary judgment under Federal Rule of Civil Procedure 56. If the Court proceeds under Rule 56, the plaintiffs argue, the decision should be deferred until discovery is completed.

It is true that consideration of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered

-7-

without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36.  Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to dismiss to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents).  In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

The plaintiffs attached the mortgage, the assignment, and Trott & Trott's April 8, 2011 letter to their complaint.  The defendant attached several additional documents to its motion to dismiss, including the promissory note and Trott & Trott's August 10, 2010 letter, both of which the plaintiffs reference in the complaint.  All of those may be considered when deciding a motion under Rule 12.  The only additional document attached to the defendant's motion to dismiss is the Michigan Attorney General's August 28, 2002 opinion that a country register of deeds has a duty to record a mortgage where the mortgagee is identified as a nominee of a disclosed or undisclosed mortgagee. The Michigan Attorney General's opinion is a matter of public record.  The Court finds no good reason to convert the motion to a summary judgment motion.  The Court will proceed under Rule 12.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true."

*Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d

635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable

to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are

drawn in favor of plaintiffs.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.

2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's

factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997) (quoting

*Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal,

this standard of review does require more than the bare assertion of legal conclusions."  *Tatum*, 58

F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).

> To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that,
> when taken as true, 'state[s] a claim to relief that is plausible on its face.'  *Bell Atl.
> Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  Plausibility requires showing
> more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to
> relief.  *Ashcroft v. Iqbal*, [556] U.S. [662], 129 S. Ct. 1937, 1949 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility

and plausibility of 'entitlement to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*,

550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by

the reviewing court but conclusions may not be unless they are plausibly supported by the pleaded

facts.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation

of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to

state a claim for relief and must be disregarded.  *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550

U.S. at 555).  However, as long as a court can "'draw the reasonable inference that the defendant

is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 129 S. Ct. at 1949).

### A. Count 1 — Foreclosure by advertisement irregularities

The plaintiffs allege that the foreclosure proceeding, which was initiated some at point before the originally scheduled sheriff's sale on August 31, 2011, is void and must be restarted because the defendant did not have authority to foreclose. They contend the proceeding is void because (a) the defendant, who was assigned MERS's interest in the mortgage, cannot foreclose because MERS did not have the authority to foreclose; (b) the assignment is invalid without proof that MERS signatory maintained a valid power of attorney; and (c) the assignment was invalid because TBW ceased to exist prior to the assignment date. None of these arguments has merit.

### 1. MERS's authority to foreclose

"Under general contract law, rights can be assigned unless the assignment is clearly restricted." *Burkhardt v. Bailey*, 260 Mich. App. 636, 653, 680 N.W.2d 453, 462 (2004) (citing Calamari & Perillo, Contracts (3d ed.), § 18–10, p. 735). When an assignment is made, "[a]n assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Ibid.* (citing *Nichols v. Lee*, 10 Mich. 526, 528-29 (1862)).

The plaintiffs rely on the Michigan Court of Appeals's decision in *Residential Funding Co., LLC v. Saurman*, 292 Mich. App. 321, 807 N.W.2d 412 (2011) (holding that MERS, as nominee for the Lender, does not meet the requirements of Mich. Comp. Laws § 600.3204(1)(d)) to support their argument that MERS, because itself could not foreclose, cannot assign someone else authority to do so. The Michigan Supreme Court, however, recently reversed the judgment of the court of appeals and held that MERS, acting as nominee of the lender, had a security lien on the property and

-10-

was authorized to foreclose by advertisement. *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011).

### 2. Invalid assignment and TBW dissolution

The plaintiffs argue that the Assignment is invalid unless the defendant has proof that signatory Kenneth Kurel maintained a valid power of attorney to execute foreclosure documents on behalf of MERS. The defendant argues that the plaintiffs do not have standing to challenge the assignment because the parties to the assignment have not contested its validity. The defendant's argument relies primarily on *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102-03 (6th Cir. Oct. 28, 2010), in which the court of appeals affirmed the district court's rejection of a challenge to a foreclosure of commercial property. The landowner alleged that the foreclosure was invalid because the defendant had failed to comply with Mich. Comp. Laws § 600.3204(3), which states that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." Mich. Comp. Laws § 600.3204(3). There was no question in that case that the assignment of the mortgage to the foreclosing defendant had been recorded before the date of sale; the plaintiff argued instead that the assignment was not valid because the trust to which the mortgage was assigned did not exist as of the date of the assignment. *Id*. at 102. The court found that the plain language of the statute required only that the public record show that the mortgage had passed to the foreclosing party and that a record chain of title is not "destroyed by an irregularity affecting the validity of the transfer" because "[e]ven if the transfer were invalidated, the public record would remain as it is, and the record chain of title would not be disturbed." *Ibid*. Therefore, it was possible

-11-

for the court in *Livonia* to say that even if there were a flaw in the assignment, the defendant had complied with the statute and was permitted to foreclose.

The plaintiffs' attack on the foreclosure proceedings in this case is based on a different statutory provision. Section 600.3204(1) states four prerequisites that must exist before foreclosure by advertisement may occur:

> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
> (c) The mortgage containing the power of sale has been properly recorded.
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

Mich. Comp. Laws § 600.3204(1). The plaintiffs' argument focuses on the fourth requirement, that the foreclosing entity must be the owner of the debt or an interest in the mortgage, or be the servicing agent. The *Livonia Properties* court did not address that section of the statute.

It is true that the *Livonia Properties* opinion contains the statement that "there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment,'" *Livonia Properties*, 399 F. App'x at 102 (quoting *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F. Supp. 2d 724, 736-37 (E.D. Mich. 2010)); but when read carefully the case does not stand for such a general and unqualified position. The Court believes, therefore, that *Livonia Properties* does not compel the conclusion that a foreclosure plaintiff can never attack the foreclosure by challenging the validity of an underlying assignment.

-12-

The *Livonia Properties* opinion contains a number of caveats to its general statement about lack of standing that would permit a plaintiff to challenge the validity of an assignment in different circumstances. First, immediately after observing the general rule that a third party cannot challenge an assignment, the court noted that "[a]n obligor 'may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void.'" *Livonia Properties*, 399 F. App'x at 102 (quoting 6A C.J.S. *Assignments* § 132 (2010)). The court stated that this rule exists to protect obligors "from having to pay the same debt twice." *Ibid*. The court found that the rule was not implicated in that case because the defendant owned the original note as well as the mortgage and the district court reviewed copies of the original note and was satisfied that it was authentic. *Ibid*.

Recently, the Michigan Supreme Court's ruling in *Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011), made it clear that a party holding a mortgage is authorized to foreclose by advertisement even where that party does not also hold an interest in the note. The assurance that the court had in *Livonia* that the plaintiffs would not be subject to double liability on their debt is therefore not necessarily present in all cases. In cases where the foreclosing party was not the holder of the note but only a holder of the mortgage, a plaintiff might have "a genuine claim . . . that [he or she] might therefore be subject to double liability on [his or her] debt." *Livonia Properties*, 399 F. App'x at 102. In such a situation, a plaintiff should be able to assert a challenge to the assignment that would render it invalid, ineffective, or void.

Second, the court's actual holding on the question of whether the plaintiff could challenge the assignment was that "even if there were a flaw in the assignment, Livonia does not have standing to raise that flaw *to challenge Farmington's chain of title*." *Ibid*. (emphasis added). Further elaborating that point, the court stated that "a party subject to foreclosure has standing to challenge

-13-

whether a lender holds record chain of title, but that determination is limited to an examination of the public records." *Id*. at 103. That statement suggests that the court's holding is premised on the fact that the plaintiff's challenge was to the existence of a record chain of title sufficient to meet the requirements of Mich. Comp. Laws § 600.3204(3). Section 600.3204(1)(d) does not refer to a record chain of title or provide that the record owner of the note or the mortgage may initiate foreclosure, but rather its plain terms require that the party initiating foreclosure actually *be* the holder of the note or the mortgage, or the servicer. The court's logic in *Livonia* that a challenge must be limited to the public record therefore does not address the context of a challenge under Mich. Comp. Laws § 600.3204(1)(d).

Third, the *Livonia* court relied on two Michigan cases to buttress its conclusion that the plaintiff did not have standing to challenge the assignment: *Bowles v. Oakman*, 246 Mich. 674, 225 N.W. 613 (1929), and *Pashak v. Interstate Highway Construction, Inc.*, No. 189886, 1998 WL 2001203 (Mich. App. Mar. 20, 1998). However, those two cases do not deal with the foreclosure statute at issue here and are otherwise distinguishable. In *Bowles*, the defendant was refusing to pay the holder of a note and attempted to challenge a fraudulent assignment to the holder. In *Pashak*, a defendant challenged the validity of an assignment of rights under a lease in an attempt to avoid duties arising out of those rights. However, in this case, the plaintiffs are not challenging the debt or arguing that a flaw in an assignment removes their obligation to pay the debt, but instead question the defendant's statutory right to foreclose. That is a distinction with a difference: the Michigan Supreme Court has held that "[t]he right to foreclosure by advertisement is conferred solely by the statute, and its provisions must be strictly complied with." *Dohm v. Haskin*, 88 Mich. 144, 147, 50 N.W. 108, 109 (1891); *see also Kim v. JP Morgan Chase Bank*,--- N.W.2d ---, 2012 WL 104463

-14-

(Mich. App. Jan. 12, 2012).  The statute requires that the party initiating foreclosure actually *be* the holder of the note or the mortgage or the servicer; a party wishing to foreclose by advertisement must strictly comply with that requirement.  *Livonia Properties* does not foreclose a challenge to compliance with the statute based on an argument that because an assignment was invalid (for example, because it was a forgery), the purported mortgage-holder did not actually hold the mortgage and therefore was not entitled to foreclose.  A successful challenge on this ground would mean, simply, that the foreclosure by advertisement was void.

But that is not what the plaintiffs alleged in their complaint in this case.  They have not contended that the defendant actually lacked authority to foreclose.  To the contrary, they have alleged that BAC Home Loans has been the servicing agent for the mortgage for years.  Instead, the plaintiffs posit that the assignment filed by the Trott & Trott lawyer from MERS to BAC Home Loans *would be* invalid "without proof that the alleged agent maintained a valid and binding power of attorney to execute such documents as the time of the execution of the assignment."  Compl. ¶ 48.  The plaintiffs never alleged that no such power of attorney existed, or that the assignment was invalid for some other actual reason.  Offering hypothetical scenarios does not satisfy the requirement that the claim must be supported by a factual statement.  *See Fabian*, 628 F.3d at 280.  The complaint does not successfully attack the foreclosure on the ground that the assignment executed by Trott & Trott was *ultra vires*.  No pleaded facts back up the plaintiffs' theorizing.

The plaintiff also argues that the assignment is invalid because TBW ceased to exist prior to MERS's assignment to the defendant.  That argument is irrelevant.  Before assigning its interest in the mortgage, MERS had the authority to foreclose by advertisement.  The status of TBW's

-15-

interest in the Note does not matter according to the Michigan Supreme Court's decision in *Saurman*.

### 3. Defendant as servicer

The defendant argues that the plaintiffs' arguments concerning whether it owned an interest in the indebtedness are irrelevant because it, as servicer of the Loan, has the authority to foreclose under Michigan Compiled Laws section 600.3204(1)(d). The complaint alleges: "For the past several years, Plaintiffs' loan has purportedly been serviced by BAC, although Plaintiffs challenge whether BAC was lawfully retained by TBW to do the same," Compl. ¶ 11, and "Plaintiffs contacted the purported servicer of their loan, Defendant, BAC, and requested a HAMP and/or other modification," *id.* ¶ 13.

Section 600.3204(1)(d) requires the party foreclosing by advertisement to be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." The plaintiffs allege that BAC Home Loans Servicing was their mortgage servicer, a fact that the Court must accept as true at this stage of the proceedings. The plaintiffs' allegation that BAC Home Loans Servicing was not retained lawfully to act as the servicer is a conclusion that the Court may not accept as true unless it is plausibly supported by the pleaded facts. *Iqbal*, 556 U.S. 662, 129 S. Ct. at 1951. The plaintiffs do not allege any facts that support the conclusion that BAC Home Loans Servicing was not the lawful servicer of the plaintiffs' mortgage. The only conclusion that can be drawn from the record is that BAC Home Loans Servicing was the servicer of the plaintiffs' mortgage and had the authority under Mich. Comp. Laws § 600.3204(1)(d) to foreclose by advertisement. Count 1 of the complaint will be dismissed with prejudice.

-16-

B.  Count 2 — Stay of foreclosure pending modification request

The plaintiffs allege that the defendant violated Michigan Compiled Laws section 600.3204(4) when it initiated  foreclosure proceedings even though the plaintiffs were eligible for a loan modification under section 3205c(1).  The defendant argues that section 600.3205c does not apply because the plaintiffs did not contact a housing counselor.

Section 600.3204(4) precludes the initiation of foreclosure proceedings  if "[c]alculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7)."  Mich. Comp. Laws § 600.3204(4)(f) (2010) (the statute was amended effective December 22, 2011; this requirement is now found in section 600.3204(4)(g)).  Section 600.3205c(1) (2010) stated:

> If a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification.

(statute amended effective December 22, 2011, but the prior version controls because it was in effect when the complaint in this case was filed, *see In re Certified Questions from U.S. Court of Appeals for the Sixth Circuit*, 416 Mich. 558, 573-74, 331 N.W.2d 456, 464 (1982)).  The statute further provides that when a borrower is eligible for a loan modification, the mortgage holder may not pursue foreclosure by advertisement unless it offers the borrower a modification agreement and the borrower fails to accept it within 14 days.  Mich. Comp. Laws § 600.3205c(7).  If the mortgage holder commences foreclosure proceedings in violation of this statute, the borrower may bring suit to "convert the foreclosure proceeding to a judicial foreclosure."   Mich. Comp. Laws § 600.3205c(8).

-17-

The plaintiffs do not allege that they contacted a housing counselor as required by the statute. Instead, the complaint alleges: "Plaintiffs therefore retained counsel, and participated in the Michigan statutory modification process, which was supposed to last 90 days, and based on their income was required to conclude with a permanent loan modification, and the cancel[l]ation of foreclosure proceedings on or about November 10, 2010." Compl. ¶ 26. Courts that have addressed this issue have found that mortgagors may not seek relief under section 600.3205c(8) unless they comply with the statute's requirements. *See Tawfik v. BAC Home Loans Servicing, LP*, No. 11-12590, 2011 WL 6181441, at *4 (E.D. Mich. Dec. 13, 2011); *Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *5 (E.D. Mich. Nov. 1, 2011); *Carl v. BAC Home Loans Servicing, LP*, No. 11-11255, 2011 WL 3203086, at *3 (E.D. Mich. July 27, 2011). The Michigan legislature recently amended the statute, which now allows a borrower to suspend foreclosure proceedings "either by contacting the [servicer] directly or by contacting a housing counselor" to request a meeting. 2011 Mich. Pub. Act No. 302 (effective Dec. 22, 2011). However, that amendment was not in effect on August 21, 2010 when the plaintiffs' lawyer sent his letter to Trott & Trott, and there is no allegation that the plaintiffs, either themselves or through counsel, contacted a housing counselor, as the statute required at the time. Moreover, the foreclosure proceeding has been suspended and remains so while this lawsuit is pending.

Because the plaintiffs have not alleged that they complied with Michigan Compiled Laws section 600.3204(4), Count 2 fails as a matter of law.

### C. Count 3 — Michigan loan modification statute

The plaintiffs allege that "by naming their foreclosing law firm as the person [with authority to enter into loan modifications]," the defendant violated Michigan Compiled Laws section

600.3205a(1)(c) because foreclosing law firms are not authorized to grant loan modifications. Trott & Trott's August 10, 2010 letter clearly indicated that the defendant designated Trott & Trott as its agent with authority to enter into loan modifications. But the plaintiffs have cited no authority to support their conclusion that such a designation does not comply with section 600.3205a(1)(c), and the Court has found none.

Count 3 also alleges that section 600.3205c requires the party authorized to enter loan modifications to work with the mortgagor to determine whether the borrower qualifies for a loan modification. The complaint alleges that "Defendant has failed to satisfy this condition precedent by engaging in meeting with the borrower . . . without the presence and/or input of any person who is actually authorized to grant a loan modification." That claim must fail, because under the plain language of section 600.3205c, the person designated under section 3205a(1)(c) is not required to work with the borrower unless the borrower has contacted a housing counselor under section 3205b. Section 600.3205c(1) states: "*If* a borrower has contacted a housing counselor under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification." (Emphasis added.) Contact with a housing counselor, therefore, is a condition precedent to any duty on the part of the person designated under section 3205a(1)(c).

Count 3 has failed to state a claim upon which relief may be granted.

### D.  Count 5 — Violation of federal regulations

The complaint alleges that the defendant failed to "provide the borrower with a face-to-face meeting to resolve any default before the borrower falls three monthly payments behind in their

mortgage." Compl. ¶ 80.  The plaintiffs' allegation is commonly known as the "mortgage servicing defense."  The Michigan Court of Appeals aptly described it as follows:

> The gist of the "mortgage servicing defense" is the notion that an FHA lender has some duty to work with a defaulting FHA mortgagor in order to assist the mortgagor in meeting his obligations under the mortgage agreement by altering the payment terms of that agreement. The sources of these alleged duties are the regulations promulgated by the Department of Housing and Urban Development (HUD) pursuant to 12 U.S.C. § 1709 and the "lender's handbook" issued by HUD.

*Mfrs. Hanover Mortg. Corp. v. Snell*, 142 Mich. App. 548, 551, 370 N.W.2d 401, 403 (1985).  Servicing practices prescribed by the Department of Housing and Urban Development for lenders servicing government insured mortgages are found at 24 C.F.R. § 203.500 through 203.656.  Section 203.500 states:

> This subpart identifies servicing practices of lending institutions that HUD considers acceptable for mortgages insured by HUD.  Failure to comply with this subpart shall not be a basis for denial of insurance benefits, but failure to comply will be cause for imposition of a civil money penalty, including a penalty under § 30.35(c)(2), or withdrawal of HUD's approval of a mortgagee.  It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed.

24 C.F.R. § 203.500.  One of those servicing practices is that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."  24 C.F.R. § 203.604(b).

The plaintiffs assert that section 203.604 requires the Court to enjoin the foreclosure sale. However, federal regulations by themselves do not create private causes of action, at least in the present case.  *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (stating that "federal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute").  The Supreme Court has explained:

-20-

> [P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (internal quotation marks and citations omitted). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" *Johnson v. City of Detroit*, 446 F.3d 614, 619-20 (6th Cir. 2006) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 692, n.13 (1979)).

The plaintiffs have not pointed to a federal statute that supports their claim, and the Sixth Circuit has held that there is no private right of action for breach of HUD's mortgage servicing policies. *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989); *see also Miller v. GE Capital Mort. Servs. (In re Miller)*, 124 F. App'x 152, 155 (4th Cir. 2005); *Perry v. Hous. Auth. of City of Charleston*, 664 F.2d 1210, 1215-17 (4th Cir. 1981). Therefore, Count 5 must be dismissed.

### E.  Count 7 — Unclean hands

Count 7 of the complaint alleges that the defendant's bad faith negotiations with respect to the loan modification and processing the loan preclude the defendant from exercising the equitable relief of foreclosure because it has unclean hands. Under Michigan law, "one who seeks the aid of equity must come in with clean hands," *Rose v. Nat'l Auction Grp., Inc.*, 466 Mich. 453, 463, 646 N.W.2d 455, 461 (2002), and fraudulent conduct is one way that a litigant can have unclean hands, *ibid.* However, the clean hands doctrine is an equitable defense, not a cause of action. *Heritage*

*Broad. Co. v. Wilson Commc'ns, Inc.*, 170 Mich. App. 812, 819, 428 N.W.2d 784, 787 (1988). Therefore, the Court finds that Count 7 fails to state a claim upon which relief can be granted.

F.   Count 8 — Breach of implied contract of good faith and fair dealing

In Count 8, the plaintiffs allege that because HUD has granted the defendant discretion to determine whether the plaintiffs qualify for a HAMP loan modification, the defendant has a duty to exercise its discretion in good faith and that the defendant breached that duty.  The defendant argues that the claim should be dismissed because Michigan does not recognize an independent action for breach of a contract's implied covenant of good faith and fair dealing.

The defendant is correct.  Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.  *Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006).  Therefore, Count 8 must be dismissed.

G.   Count 11 — Breach of contract

In Count 11, the plaintiffs allege that a valid contract existed between the parties that required the defendant to send a HAMP modification package to the plaintiffs via overnight mail. The plaintiffs' claim lacks merit.  The mortgage, the only binding contract that the plaintiffs allege exists between the parties, does not contain such a provision.  Nor does it contain a provision that requires BAC Home Loans Servicing to modify the plaintiffs' loan before or after default.  It is impossible, therefore, for the plaintiffs to state a claim.  *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (holding that, once the plaintiff establishes a valid contract, the plaintiff must "then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury").

Additionally, to the extent that the plaintiffs are seeking to enforce an oral statement by a BAC Home Loans Servicing employee regarding the terms of their loan or a modification, the statute of frauds bars the plaintiffs' claim. Mich. Comp. Laws § 566.132(2); *Crown Techn. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000). Michigan's statute of frauds states:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> . . .
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2)(b).

Therefore, the Court will dismiss Count 11 of the complaint.

### H.  Count 12 — Promissory estoppel

In Count 12, the plaintiffs allege that the defendant has promised to place the plaintiffs in a permanent home loan modification in exchange for the payment of various sums of money. However, Michigan decisional law forecloses the plaintiffs' claim in this count, which is barred by the statute of frauds. *Crown Technology Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000). The Michigan Court of Appeals explained:

> [The plaintiff's] argument that M.C.L. § 566.132(2); MSA 26.922(2) does not eliminate promissory estoppel as a cause of action for an unfulfilled oral promise to waive a loan term is unpersuasive. The statute of frauds specifically bars "an action." By not specifying what sort of "action" M.C.L. § 566.132(2); MSA 26.922(2) prohibits, we read this as an unqualified and broad ban. We also note that the subsections of M.C.L. § 566.132(2); MSA 26.922(2) use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely. This is consistent with interpreting M.C.L. § 566.132(2); MSA 26.922(2) to preclude all actions for the enumerated promises

and commitments, including actions for promissory estoppel. Further, it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements.

*Ibid.* Therefore, the Court must grant the defendant's motion to dismiss as to Count 12 of the complaint.

### I. Count 14 — Intentional fraud

The defendant argues that the fraud allegations in the complaint are not pleaded with sufficient particularity. Federal pleading requirements govern actions commenced in or removed to federal court. *See Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335-36 (6th Cir. 1988). When alleging fraud in federal court, a party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotations and citation omitted). In addition, a party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotations and citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under Michigan law, the elements of fraud are as follows:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge

-24-

of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976); *Higgins v. Lawrence*, 107 Mich. App. 178, 184, 309 N.W.2d 194, 197 (1981).

In this case, the plaintiffs allege that "from the date Plaintiffs first contacted Defendant to request assistance with their loan payments, and running through the Statutory Modification Process, agents of Defendant have represented to Plaintiffs that they would be granted a permanent modification under HAMP, if they qualified for the same, and if they refrained from exercising [their] rights under the law, and continued to send payments." Compl. ¶ 127. The plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), and count 14, therefore, is defective.

However, dismissal with prejudice on the basis of failure to plead with particularity ordinarily should be done only after the plaintiff has a chance to amend the complaint. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). But the plaintiffs have not sought leave to amend, despite the fact that the defendant's motion was filed on October 19, 2011 and the plaintiffs did not file their answer — normally due within twenty-one days, *see* E.D. Mich. LR 7.1(e)(1)(B) — until January 22, 2012. Therefore, the Court will dismiss Count 14 of the complaint without prejudice.

### J.  Count 15 — Constructive fraud

The plaintiffs plead constructive fraud in the alternative to their intentional fraud complaint. Constructive fraud is an actual fraud without the element of intent. *See Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, 420 Mich. 176, 188-90, 362 N.W.2d 595, 601 (1984). As the Michigan Court

of Appeals explains it, "the distinction between actual fraud and constructive fraud is that actual fraud is an intentional misrepresentation that a party makes to induce detrimental reliance, while constructive fraud is a misrepresentation that causes the same effect, but without a purposeful design to defraud." *Feldkamp v. Farm Bureau Ins. Co.*, No. 272855, 2009 WL 103223, at *5 (Mich. Ct. App. Jan. 15, 2009).

But for the purpose of the Federal Rules of Civil Procedure, fraud is fraud. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The claim in count 15 must fail for the same reasons as the plaintiffs' intentional fraud claim: they have failed to allege fraud with the specificity required by Rule 9(b). They have failed to identify the speaker or where and when the statements were made. Therefore, Count 15 will be dismissed without prejudice.

### III.

The Court finds that the defendant's motion may be decided properly under Federal Rule of Civil Procedure 12(b)(6). The Court also finds that the complaint fails to state a claim for which relief may be granted. However, the plaintiffs may be able to save counts 14 and 15 with proper pleading, so those counts will be dismissed without prejudice.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #3] is **GRANTED**.

It is further **ORDERED** that all counts of the complaint are **DISMISSED WITH PREJUDICE**, save counts 14 and 15, which are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 7, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 7, 2012.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---